[Cite as *State v. Braun*, 2018-Ohio-3628.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-003** |
| WALTER LEE BRAUN, II, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000933.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, *Karen A. Sheppert and Alexandra E. Kutz*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Walter Lee Braun, II, appeals from the August 24, 2016 judgment of the Lake County Court of Common Pleas, sentencing him for domestic violence. On appeal, appellant asserts he was deprived of his rights to fair trial and due process and that his conviction was against the manifest weight of the evidence. Finding no reversible error, we affirm.

{¶2}   On January 22, 2016, appellant was indicted by the Lake County Grand Jury on three counts: count one, domestic violence, a felony of the third degree, in violation of R.C. 2919.25(A); count two, menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.211(A)(1); and count three, aggravated menacing, a misdemeanor of the first degree, in violation of R.C. 2903.21(A).   Appellant was represented by counsel and waived his right to appear at arraignment.   The trial court entered a not guilty plea on his behalf.

{¶3}   Discovery was exchanged.  Appellant filed motions in limine, including one regarding details of his prior convictions, which the trial court denied.   The court concluded that appellee, the state of Ohio, was permitted to get into the details of the incidents due to the menacing by stalking charge and indicated it would give a special instruction on how the jury was to use that evidence.   The parties stipulated to appellant's two prior domestic violence convictions from 2001 involving another victim. (Joint Exhibit 1).

{¶4}   A jury trial commenced on July 19, 2016.  Prior to the start of trial, count three of the indictment, aggravated menacing, was dismissed.

{¶5}   The court presented two witnesses: Mary Holtcamp (a realtor and co-worker/friend of appellant's mother, Bonnie Braun); and Dawn Malek (appellant's former girlfriend and mother to two of their children).  The state submitted 17 exhibits and five witnesses: Deputy Dustin Majewski (Lake County Sheriff's Office); Jessica Dwyer (appellant's ex-wife and the victim in this case); Chief Troy Hager (Perry Village); Sergeant Eric Miller (Painesville Police Department); and Deputy Dale Pohto (Lake County Sheriff's Office).  Appellant submitted 6 exhibits, testified on his own behalf, and

2

presented four witnesses: Susan Sweet (Dawn Malek's mother); Bonnie Braun (appellant's mother); Matthew Jeffrey Heron (appellant's former classmate and Jessica Dwyer's other ex-husband); and Dawn Malek. The parties also submitted one joint exhibit. (Joint Exhibit 1).

{¶6} Appellant and Jessica Dwyer married in 2010. The couple was together for several years. Following their strained relationship and dissolution, appellant's father passed away. Jessica texted appellant to express her sympathy. (Defendant's Exhibit F). Jessica also called Bonnie Braun, her ex-mother-in-law, to pay respects. Bonnie had suffered from a brain injury and needed help with finances. Jessica planned to provide assistance and made arrangements to visit Bonnie on October 21, 2015. To Jessica's knowledge, appellant did not live with his mother.

{¶7} Upon Jessica's arrival, Bonnie was home with her friend, Mary Holtcamp. The three women went in a back room to look through financial papers. Jessica observed appellant's vehicle outside. Dawn Malek, appellant's former girlfriend and mother to two of their children, was a passenger in his car. Appellant called his mother. Bonnie told appellant that Jessica was inside. Appellant stayed outside. Jessica walked outside through the front door. She approached appellant to express her sympathy regarding the loss of his father.

{¶8} Appellant began raising his voice telling Jessica that she did not belong at his mother's house, that she did not care about his father, and that she did not care about his family. Dawn, Bonnie, and Mary heard the yelling. Appellant accused Jessica of trespassing and walked into the house through the front door. Jessica followed

3

appellant as he tried to close the door. Jessica begged appellant to let her back in so she could get her purse, keys, and phone.

{¶9} As Jessica attempted to re-enter the residence, she testified that appellant grabbed her by the neck with both hands and tried to strangle her. No witness observed this. Jessica fell back against the front door between the house and the open door, hitting her back, neck, and elbow. She was "scared to death." (Jury Trial T.p. 134). Jessica was able to break away from appellant and smacked him across the face. She ran inside to tell Bonnie and Mary what had happened. Jessica showed the ladies marks on her neck. Bonnie was upset and embarrassed. Mary was in shock.

{¶10} Appellant came in calling Jessica names, "f***ing whore," "f***ing bitch," and saying that she did not belong there. (Jury Trial T.p. 138). Appellant yelled at his mother for allowing Jessica to come over. Appellant was also yelling at Jessica, "'F***ing whore, if I ever f***ing see you, I'll kill you.'" (Jury Trial T.p. 141). Jessica grabbed her belongings and left. Jessica testified she had prior experience with appellant when they were married where he was violent. Jessica also indicated she was aware that appellant had been physically violent toward his mother and Dawn.

{¶11} Immediately thereafter, Jessica went to the police. She gave a statement regarding the incident. Jessica sustained bruises on her neck and scratches on her elbow. A sheriff's deputy took photographs of her injuries. (State's Exhibits 3A-E, 4A-B, 5A-B).

{¶12} Appellant testified that the summer before his father died, he was seriously injured and hospitalized due to a car accident. At the time of his father's death, appellant indicated he still had difficulty raising his arm. After receiving Jessica's

4

text, appellant did not want her to come around and felt her intentions were not good. Nevertheless, Jessica later went to his mother's home. While outside, appellant asserted Jessica was the aggressor and that she smacked him across the face. Bonnie and Dawn saw Jessica smack appellant and push her way into the home. Appellant denies grabbing Jessica around the neck and forcing her to leave the residence.

{¶13} Following trial, the jury found appellant guilty on count one, domestic violence, a felony of the third degree, in violation of R.C. 2919.25(A), and not guilty on count two, menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.211(A)(1).[1]

{¶14} On August 24, 2016, the trial court sentenced appellant to two years of community control with the condition that he serve 120 days in jail with 30 days credit for time served. Appellant appealed and asserts the following two assignments of error:

{¶15} "[1.] The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court admitted extensive and detailed testimony regarding his prior domestic violence convictions and violent acts.

{¶16} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶17} In his first assignment of error, appellant argues he was deprived of his constitutional rights to fair trial and due process based on the trial court's admission of testimony regarding his prior domestic violence convictions and violent acts. Specifically, appellant posits the court committed reversible error in permitting the state

---

1. A former spouse is included as a "Family or household member" under the domestic violence statute. R.C. 2919.25(F)(1)(a)(i).

5

to present testimony about his violent behavior years prior with a different woman, Dawn Malek.

{¶18} The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Haynes*, 11th Dist. Ashtabula No. 2012-A-0032, 2013-Ohio-2401, ¶50, citing *State v. Sage,* 31 Ohio St.3d 173, paragraph two of the syllabus (1987). A trial court's decision to admit or exclude evidence will not be overturned absent an abuse of discretion. *Haynes* at ¶50, citing *State v. Benson,* 11th Dist. Portage No. 2001-P-0086, 2002-Ohio-6942, ¶7, citing *State v. Kinley,* 72 Ohio St.3d 491, 497 (1995). The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶19} Evid.R. 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶20} Evid.R. 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

6

{¶21} Evid.R. 403(A) states: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶22} Evid.R. 404(B) provides in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *"

{¶23} As stated, appellant was charged with domestic violence, a felony of the third degree, in which he was found guilty, and menacing by stalking, a felony of the fourth degree, in which he was found not guilty.

{¶24} R.C. 2903.211, "Menacing by stalking," states in part:

{¶25} "(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. * * *"

{¶26} Generally, menacing by stalking is a misdemeanor of the first degree but may be enhanced to a felony of the fourth degree if "[t]he offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person." R.C. 2903.211(B)(2)(e).

{¶27} Thus, having a history of violence toward the victim or any other person is an element of the offense of menacing by stalking. Accordingly, testimony about violence between appellant and Dawn was relevant. As the trial court has broad

7

discretion to admit other acts evidence, based on the facts presented in this case, there was no error.

{¶28} The trial court limited the jury's usage of the complained of evidence at issue by giving the following jury instruction:

{¶29} "Evidence was received that the Defendant was previously convicted of Domestic Violence. That evidence was received only for a limited purpose. Specifically, that evidence was received in this case because prior convictions are an element of the offense of Domestic Violence charged in Count One and may also be considered as evidence in deciding whether it proves the Defendant has a history of violence towards Jessica Dwyer or any other person or a history of other violent acts towards Jessica Dwyer or any other person as charged in Count Two. This evidence was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity or accordance with that character, nor may you consider the incidents involving the two prior convictions when considering whether the State has proven a pattern of conduct as alleged in Count Two.

{¶30} "Evidence was also received about the commission of acts other than the offenses with which the Defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity or accordance with that character. If you find that the evidence of other acts is true and that the Defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the Defendant has a history of violence towards Jessica Dwyer or any other person or a history of other violent acts towards Jessica Dwyer or

any other person as alleged in Count Two. That evidence cannot be considered for any other purpose." (Jury Trial T.p. 658-659).

{¶31} In support of his position, appellant relies on *State v. Spaulding*, _Ohio St.3d _, 2016-Ohio-8126. In that case, the Ohio Supreme Court found that a 2001 conviction for domestic violence against the appellant's mother and sister, who were not the victims in the menacing stalking charge, was relevant and admissible. *Id.* at ¶126-127. Although relevant and admissible as an element of the menacing by stalking statute, the Court determined that the details of the 2001 incident were not probative of whether the victim believed the appellant would cause her physical harm and should have been excluded. *Id.* at ¶128. However, the Court held that this did not rise to the level of plain error because there was ample other evidence that supported the appellant's convictions. *Id.* at ¶129.

{¶32} In the case at bar, Jessica's testimony revealed she was aware of the violent episodes between appellant and Dawn, thereby making the evidence relevant as to whether Jessica believed appellant would harm her. Evid.R. 401, 402. The probative value of the evidence in this particular case was not "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

{¶33} The trial court specifically limited the jury's consideration of the acts complained of by appellant to the specific element of history of violence in the menacing by stalking statute. The two prior convictions from 2001 constituted elements that the state was required to prove regarding the domestic violence charge. In addition,

9

evidence of domestic violence included photographs of physical injuries sustained by Jessica, corroborating her testimony. (State's Exhibits 3A-E, 4A-B, 5A-B).

{¶34} Appellant's first assignment of error is without merit.

{¶35} In his second assignment of error, appellant contends his conviction for domestic violence is against the manifest weight of the evidence. Specifically, appellant asserts that the evidence from the state was contradicted and impeached by other witnesses.

{¶36} This court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4-5 (Dec. 23, 1994):

{¶37} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶38} "* * *

{¶39} "* * * '[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.

{¶40} "'In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)'" (Citations omitted.) * * *" (Emphasis sic.) (Citations omitted.)

{¶41} Regarding manifest weight, a judgment of a trial court should be reversed "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The trier of fact is in the best position to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus (1967).

{¶42} "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Fasline*, 11th Dist. Trumbull No. 2014-T-0004, 2015-Ohio-715, ¶39, citing *State v. Biros*, 78 Ohio St.3d 426, 447 (1997), citing *State v. Jenks*, 61 Ohio St.3d 259, paragraph one of the syllabus (1991), superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997).

{¶43} Appellant mainly challenges Jessica's testimony versus his testimony and the other defense witnesses. We note that the jury was able to weigh witness credibility and version of events. Any discrepancies were to be reconciled by the jury. By finding appellant guilty on count one, domestic violence, but not guilty on count two, menacing by stalking, the jury demonstrated its ability to distinguish and weigh evidence independently. In fact, the trial court instructed the jury as follows:

{¶44} "You are the sole judges of the facts, the credibility of the witnesses, including the Defendant, and the weight of the evidence. To weigh the evidence, you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you apply in your daily lives. Now, these tests include the appearance of each witness upon the stand; the manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear and know the things concerning which the

11

witness testified; accuracy of memory; frankness or lack of it; intelligence; interest and bias, if any, together with all the facts and circumstances surrounding the testimony. Applying these tests, you will assign to the testimony of each witness such weight as you deem proper.

{¶45} "The testimony of the Defendant is to be weighed by the same rules that apply to other witnesses.

{¶46} "* * *

{¶47} "You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief." (Jury Trial T.p. 659-661).

{¶48} In this case, the jury chose to believe the state's witnesses. *DeHass, supra*, at paragraph one of the syllabus. The primary evidence came from Jessica, the victim. Jessica's testimony was corroborated. Jessica's injuries were consistent with her testimony. Jessica immediately told Bonnie and Mary about the altercation with appellant and showed them her injuries. Jessica also immediately reported the incident to police who observed and documented her injuries with photographs. (State's Exhibits 3A-E, 4A-B, 5A-B). Based on the facts and evidence presented, as previously stated and addressed, we cannot say that the jury clearly lost its way in finding appellant guilty of domestic violence. *Schlee, supra*, at *4-5; *Thompkins, supra*, at 387.

{¶49} Appellant's second assignment of error is without merit.

{¶50} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J., concurs in judgment only,

TIMOTHY P. CANNON, J., concurs in part and concurs in judgment only in part with a Concurring Opinion.

_____

TIMOTHY P. CANNON, J., concurring in part and concurring in judgment only in part.

{¶51} I concur in judgment only with regard to appellant's first assignment of error.

{¶52} Appellant argues the trial court committed reversible error when it permitted the State to present detailed and extensive testimony about behavior that took place 15 years prior in a different relationship, which resulted in two convictions for domestic violence in 2001, and thereby created an overwhelming danger of unfair prejudice.

{¶53} The fact of the 2001 convictions was relevant to the current charge of domestic violence, a third-degree felony, because the State was required to prove at least two prior domestic violence convictions. *See* R.C. 2919.25(D)(4). Testimony related to the *details* of the 2001 offenses was not necessary to sustain this charge, however, because appellant had stipulated to the previous convictions.

{¶54} The fact of the 2001 convictions was also relevant to the current menacing by stalking charge, because the offense is elevated to a fourth-degree felony if the State proves "[t]he offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person." R.C.

13

2903.211(B)(2)(e). Testimony related to the *details* of the 2001 offenses was not necessary to prove this fact, either, because of appellant's stipulation.

{¶55} To sustain the menacing by stalking charge, the State was also required to establish that appellant knowingly caused Ms. Dwyer to believe he was going to cause her physical harm. The lead opinion concludes the testimony regarding the details of appellant's past domestic violence convictions was relevant to prove whether Ms. Dwyer believed appellant was going to harm her and that it was admissible under Evid.R. 403(A).

{¶56} Respectfully, I disagree with this conclusion.

{¶57} Evid.R. 403(A) provides that, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." I therefore take issue with the trial court's statement, in response to appellant's objection at trial, that the prosecutor was "allowed to present evidence as to history of violence going towards – present multiple witnesses, *whatever she wants to do in that regard.*" (Emphasis added.) The admissibility of relevant evidence is always limited by the application of Evid.R. 403(A).

{¶58} Here, the details of appellant's 2001 convictions, which occurred 15 years prior and against a different person, are not probative of whether Ms. Dwyer believed appellant was going to cause her physical harm on that day. Further, any probative value that may exist was clearly outweighed by the danger of unfair prejudice and the risk that the jury may have been misled. The testimony concerning the details should have been excluded.

14

{¶59} Nevertheless, I do not conclude that the admission of this testimony rises to the level of reversible error. Appellant was not convicted of the menacing by stalking charge, and, due to the other evidence supporting appellant's current conviction for domestic violence, he has not established that he was deprived of his constitutional rights to fair trial and due process. *See, e.g., State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶126-129.