[Cite as *State v. Abdus-Salaam*, 2024-Ohio-2773.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024 CAA 020012 |
| NASEEM ABDUS-SALAAM | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:    Apeal from the Delaware County Court of
Common Pleas, Case No. 23-CRI-10- 0601


JUDGMENT:    Reversed in part; and remanded


DATE OF JUDGMENT ENTRY:    July 22, 2024


APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

MELISSA A. SCHIFFEL    CHRISTOPHER BAZELEY
Delaware County Prosecutor    9200 Montgomery Road, Ste. 8A
BY: KATHERYN L. MUNGER    Cincinnati, OH 45242
Assistant Prosecutor
145 North Union Street, 3rd Floor
Delaware, OH 43015

*Gwin, J.*

**{¶1}** Defendant-appellant Naseem Abdus-Salaam ["Abdus-Salaam"] was convicted after a jury trial at which he represented himself of Inducing Panic, Menacing by Stalking, Intimidation of an Attorney, Victim or Witness in a Criminal Case, and sixteen counts of violating a Protection Order.

**{¶2}** On appeal, Abdus-Salaam argues that the trial judge admitted evidence of his prior bad acts in violation of Evid.R. 404(B); he has been prejudiced by the trial judge's failure to merge his convictions for Menacing by Stalking and Violating a Protection Order; and, the trial judge failed to properly advise him of the R.C. 2929.19(B)(2)(c) non-life felony sentencing factors as required by the Reagan Tokes statute.

**{¶3}** Because we do not find plain error in the admission of Abdus-Salaam's past conduct or in the trial judge's sentencing him for Menacing by Stalking and Violating a Protection Order, we affirm the judgment of the Delaware County Court of Common Pleas. However, because we also find that the trial judge failed to properly advise him of all of the R.C. 2929.19(B)(2)(c) non-life felony sentencing factors as required by the Reagan Tokes statute, we remand this matter solely for purposes of providing the proper R.C. 2929.19(B)(2)(c) notifications.

*Facts and Procedural History*

**Case Number 22CR-I- 05-0282**

**{¶4}** On June 30, 2022, in Delaware County Court of Common Pleas, Case Number 22CR-I- 05-0282, Abdus-Salaam was Indicted on one count of Inducing Panic in violation of R.C. 2917.31(A)(1) / 2917.31(C)(5), a felony of the second degree.

{¶5}   On July 14, 2022, the state filed a Notice of Intent to Introduce Evidence pursuant to Evid. R. 404(B) seeking to introduce evidence of a second bomb threat on May 5, 2022 and April 2022 telephone harassment of E.R. [Docket Entry No. 32].

{¶6}   On July 18, 2022, Abdus-Salaam, through appointed counsel, filed a written Not Guilty by Reason of Insanity plea ("NGRI") and a Motion for a Competency Evaluation. [Docket Entry No. 34; 36]. The trial judge granted the motion for a competency evaluation by Judgment Entry filed July 23, 2022. [Docket Entry No. 41]. By Judgment Entry filed September 6, 2022, Abdus-Salaam was found competent to stand trial. [Docket Entry No. 46]. On October 3, 2022, Abdus-Salaam filed a motion to withdraw his NGRI plea, which was granted by Judgment Entry filed October 18, 2022. [Docket Entry No. 64].

{¶7}   On December 21, 2022, the state filed a Notice of Intent to Introduce Certified Domestic Records of a Regularly Conducted Activity Pursuant to Evid.R. 902(11) seeking to introduce records from AT&T and TextMe Inc. [Docket Entry No. 72].

{¶8}   On January 30, 2023, the state filed a Motion to Revoke Bond, alleging that Abdus-Salaam failed to engage in drug and alcohol assessment and had repeated GPS monitoring violations. [Docket Entry No. 85]. Bond was revoked by Judgment Entry filed January 31, 2023. [Docket Entry No. 88].

{¶9}   On February 7, 2023 the trial judge filed a Judgment Entry that Abdus-Salaam failed to appear for his February 7, 2023 jury trial. A show-cause hearing was scheduled and a warrant for Abdus-Salaam's arrest was issued. [Docket Entry Nos. 91, 92].

{¶10} On motion of the state, the trial court dismissed Case No. 22CR-I-05-0282 without prejudice by Judgment Entry filed February 24, 2023. [Docket Entry No. 99].

### Case Number 23CR-I-02-0089

{¶11} On February 16, 2023, in Delaware County Court of Common Pleas, Case Number 23CR-I-02-0089, Abdus-Salaam was indicted for:

Count One: Inducing Panic in violation of R.C. 2917.31(A)(1)/ 2917.31(C)(5), a felony of the second degree;

Count Two: Menacing by Stalking in violation of R.C. 2903.211(A)(2)(a) / 2903.211(B)(2)(b), a felony of the fourth degree;

Count Three: Intimidation of an Attorney, Victim or Crime Witness in a Criminal Case, in violation of R.C. 2921.04(B)(2) / 2921.04(D), a felony of the third degree;

Count Four: Violating a Protection Order, (Nov. 22, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Five: Violating a Protection Order, (Dec. 26, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Six: Violating a Protection Order, (Dec. 29, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Seven: Violating a Protection Order, (Dec. 31, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Eight: Violating a Protection Order, (Jan. 6, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Nine: Violating a Protection Order, (Jan. 8, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Ten: Failure to Appear as Required by Recognizance (Feb. 7, 2022), in violation of R.C. 2937.99(A) / 2937.99(B) a felony of the fourth degree.

{¶12} By Judgment Entry filed February 24, 2023, the trial judge ordered all discovery and court filings in Case Number 22CR-I-05-0282 to be transferred to Case Number 23CR-I-02-0089. [Docket Entry No. 8].

{¶13} On August 7, 2023, the trial judge granted appointed counsel's motion to withdraw as counsel for Abdus-Salaam, and appointed new counsel. [Docket Entry No. 47].

{¶14} On August 9, 2023, the state filed a motion to restrict Abdus-Salaam's jail telephone privileges alleging that he was attempting to contact the victim, E.R., through various means. [Docket Entry No. 50]. Abdus-Salaam, through counsel filed a Memorandum in Opposition to the state's motion on August 23, 2023. [Docket Entry No. 52]. Abdus-Salaam argued that there have been no allegations that he has attempted to contact the victim since he was incarcerated; therefore, he argued, such a restriction would amount to cruel and unusual punishment. The trial judge denied the state's motion without prejudice by Judgment Entry filed August 25, 2023. [Docket Entry No. 53].

{¶15} By Judgment Entry filed November 7, 2023, the trial judge granted the state's motion to dismiss the case without prejudice. [Docket Entry No. 66).

**Case Number 23CR-I-10-0601**

{¶16} On October 12, 2023, in Delaware County Court of Common Pleas, Case Number 23CR-I-10-0601, Abdus-Salaam was indicted for:

Count One: Inducing Panic in violation of R.C. 2917.31(A)(1) / 2917.31(C)(5), a felony of the second degree;

Count Two: Menacing by Stalking (May 4, 2022 through August 1, 2023) in violation of R.C. 2903.211(A)(1) / 2903.211(B)(2)(b), a felony of the fourth degree;

Count Three: Menacing by Stalking (May 4, 2022 through August 1, 2023) in violation of R.C. 2903.211(A)(1) / 2903.211(B)(2)(e), a felony of the fourth degree;

Count Four: Intimidation of an Attorney, Victim or Crime Witness in a Criminal Case (May 4, 2022 through August 1, 2023), in violation of R.C. 2921.04(B)(2) / 2921.04(D), a felony of the third degree;

Count Five: Intimidation of an Attorney, Victim or Crime Witness in a Criminal Case (May 4, 2022 through August 1, 2022[1]), in violation of R.C. 2921.04(B)(1) / 2921.04(D), a felony of the third degree;

Count Six: Violating a Protection Order, (Nov. 22, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Seven: Violating a Protection Order, (Nov. 22, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

---

[1] By Judgment Entry filed January 9, 2024 the trial judge granted the state's motion to amend the date range on Count Five to May 4, 2022 through August 1, **2023** and Count Nineteen to July 10, **2023**.

Count Eight: Violating a Protection Order, (Dec. 26, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Nine: Violating a Protection Order, (Dec. 26, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

Count Ten: Violating a Protection Order, (Dec. 29, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Eleven: Violating a Protection Order, (Dec. 29, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

Count Twelve: Violating a Protection Order, (Dec. 31, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Thirteen: Violating a Protection Order, (Dec. 31, 2022) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

Count Fourteen: Violating a Protection Order, (Jan. 6, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Fifteen: Violating a Protection Order, (Jan. 6, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

Count Sixteen: Violating a Protection Order, (Jan. 8, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Seventeen: Violating a Protection Order, (Jan. 8, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

Count Eighteen: Violating a Protection Order, (July 10, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Nineteen: Violating a Protection Order, (July 10, 2022[2]) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

Count Twenty: Violating a Protection Order, (July 20, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(4), a felony of the third degree;

Count Twenty-one: Violating a Protection Order, (July 20, 2023) in violation of R.C. 2919.27(A)(1) / 2919.27(B)(3)(a), a felony of the third degree;

Count Twenty-two: Failure to Appear as Required by Recognizance (Feb. 7, 2022), in violation of R.C. 2937.99(A) / 2937.99(B), a felony of the fourth degree.

**{¶17}** By Judgment Entry filed October 31, 2023, the trial judge ordered all discovery and court filings in Case Number 23CR-I-02-0089 to be transferred to Case Number 23CR-I-10-0601. [Docket Entry No. 36].

**{¶18}** On October 31, 2023, the state filed a Notice of Intent to Introduce Evidence pursuant to Evid.R. 404(B) seeking to introduce evidence of Abdus-Salaam's past conduct with the victim. [Docket Entry No. 33].

**{¶19}** On November 3, 2023, the state filed an Amended Notice of Intent to Introduce Certified Domestic Records of a Regularly Conducted Activity Pursuant to Evid.R. 902(11) seeking to introduce records from AT&T and TextMe Inc.

---

[2] See note 1.

{¶20} On November 3, 2023, appointed counsel for Abdus-Salaam filed a trial brief.

{¶21} On November 6, 2023, the trial judge held a hearing to address Abdus-Salaam's request to represent himself. The trial judge engaged in a lengthy colloquy about the dangers of self-representation. Abdus-Salaam then knowingly waived his right to counsel and represented himself at trial, with standby counsel assigned. T., Nov. 6, 2023 at 8-14. A written waiver of counsel signed by Abdus-Salaam was filed on Nov. 7, 2023. [Docket Entry No. 43].

{¶22} By Judgment Entry filed November 9, 2023, the trial judge granted Abdus-Salaam's motion and continued the trial to January 2, 2024. [Docket Entry No. 45].

{¶23} On December 13, 2023, Abdus-Salaam filed a handwritten, pro se motion to continue the trial date. [Docket Entry No. 70]. The state opposed the motion by Memorandum filed December 15, 2023. [Docket Entry No. 71]. By Judgment Entry filed December 20, 2023, the trial judge denied the motion. [Docket Entry No. 72]. However, by Judgment Entry filed December 29, 2023, the trial judge continued the trial date to January 9, 2023 because stand-by counsel for Abdus-Salaam was unavailable on January 2, 2023. [Docket Entry No. 74].

{¶24} By Judgment Entry filed January 9, 2024, the trial judge granted the state's motion to amend the date range on Count Five of the Indictment to May 4, 2022 through August 1, 2023 and Count Nineteen of the Indictment to July 10, 2023.

{¶25} A jury trial commenced on January 9, 2024. The evidence presented during the jury trial is as follows.

**Hayes High School Receives Bomb Threats**

**{¶26}** On May 4, 2022, the Delaware City Schools, Hayes High School administrative secretary answered the main phone line and heard a male demand "$2,000 (sic.) taken to Walmart by 9:00" or a bomb would go off inside the school building. 1T. at 121; 122.[3] Minutes later, the same male called the same main phone line and said "2 million. 2 million." Id. at 123; State's Exhibit 1. The second call was recorded by the police. The school was evacuated. 1T. at 124; 129. Caller ID displayed the phone number of the threatening phone calls. Id. at 122; 130. Over the course of the next several hours, the phone number was linked to a TextMe account; however, no information identifying the user was obtained.

**{¶27}** The next morning on May 5, 2022, the same phone number with the same male voice called again to the main line twice and made additional bomb threats. 2T. at 282. The police again requested user and subscriber information from TextMe[4]. Id. at 282. TextMe, LLC returned more detailed basic user information that included text and call history from the application. 2T. at 285. The text and call history showed that the same phone number sent multiple texts and made multiple phone calls to another specified phone number on March 31, 2022. Id. 286. Law enforcement learned that phone number was associated with a Delaware Police Department police report taken on April 11, 2022 which involved an aggravated menacing allegation. Id. 286; State's Exhibit 23. The owner of that phone number, E.R., was the alleged victim of ongoing threats from her ex-boyfriend, Abdus-Salaam. Id. at 286-287.

---

[3] For clarity, the transcript of Abdus-Salaam's jury trial will be referred to as "__T.__" signifying the volume and page number.

[4] TextMe is a downloadable application that phone users can use to make calls or send text messages. 2T. at 283. The user can request a phone number, and one will be generated for the user to use when utilizing the application. Id.

{¶28} The High School was placed on a heighten security state during E.R.'s graduation because of a post by Abdus-Salaam on social media saying that he was "Gonna be at graduation with either an air horn or a bull horn." 1T. at 133. And, then a separate photograph of Abdus-Salaam holding a rifle. 1T. at 11; 2T. at 238 -239; State's Exhibit 32.

## Detectives Discover the Bomb Threats Are Related to Another Case Involving Abdus-Salaam

{¶29} Detective Michael Bolen of the Delaware Police Department met with E.R. in January 2023 and learned that Abdus-Salaam was continuing to send threatening and harassing communications to her. 2T. at 289. During the forensic examination of E.R.'s phone, law enforcement found "thousands and thousands of lines of communication from [Abdus-Salaam] to [E.R.] and located approximately 55 different phone numbers that he used to communicate with her." Id. at 289; 291; 292. The same phone number used to make the bomb threat was used to communicate with E.R. from March through May 2022. Id. at 294-295. That phone number had been assigned to Abdus-Salaam on March 30, 2022. Id. at 295.

{¶30} Sometime in May or June, 2022, Detective Bolen interviewed Abdus-Salaam at the hospital after he had been shot in an unrelated incident. Id. 293; 245-247; State's Exhibit 30[5]. Abdus-Salaam repeatedly denied making the bomb threats. State's Exhibit 30. He further denied that he even had a cell phone during that time. Id.

{¶31} Detective Bolen testified that Abdus-Salaam was served with a protection order involving E.R. on June 21, 2022. 2T. at 295. However, Abdus-Salaam continued to

---

[5] No date is contained in or on State's Exhibit 30 establishing the specific date when the meeting between Abdus-Salaam and Detective Bolen took place.

contact E.R. Id. As a result, Detective Bolen testified that Abdus-Salaam was charged with three counts of Violation of a Protection Order. 2T. at 296; State's Exhibit 25. Abdus-Salaam was convicted and ordered to abide by the Civil Protection Order. Id.

{¶32} Through his contact with Abdus-Salaam, Detective Bolen was able to identify his voice as the caller of the bomb threats. 2T. at 291-292.

### E.R. Testifies to Abdus-Salaam's Harassment

{¶33} E.R. is nineteen years old. She and Abdus-Salaam had a three to four-year dating relationship. 2T. at 197; 199. She was a sophomore or junior and Abdus-Salaam was eighteen or nineteen years old at the time. Id. at 201. The couple would spend most of their days together. Id. at 202. However, after approximately six months, the relationship began to sour. Id. E.R. felt Abdus-Salaam was too controlling and the couple began to fight. Id. at 202-203. E.R. testified that Abdus-Salaam began threatening her, her family and her friends. Id. at 203-205. She further testified that Abdus-Salaam would injure himself if she threatened to end the relationship. 2T. at 215-216; State's Exhibit 18.

{¶34} E.R. eventually obtained a Civil Protection Order in Delaware County Court of Common Pleas, Case Number 22 DV H 04 0232. 2T. at 223. However, Abdus-Salaam continued to threaten E.R. using various means. 2T. at 227. E.R. would speak to Abdus-Salaam during this time, and admitted that she would also contact him during this time. Id. at 227-228; 249; 265. E.R. identified voicemails left by Abdus-Salaam from the jail on July 20, 2023 and July 23, 2023. Id. at 228-229; State's Exhibit 5 and 6. Abdus-Salaam also sent letters to E.R. while he was in jail. Id. at 229-232. In a letter dated March 27, 2023, Abdus-Salaam asked E.R. not to talk to the prosecution and to not tell the truth. Id. at 232; State's Exhibit 7-A. Abdus-Salaam's text messages from December 26, 2022

threatens E.R. that he will choke her, beat her face in with a tire iron, beat her whole family's face in, and shoot her brains out. 2T. at 315-319; State's Exhibit 26-D, 26-E. He further texted E.R., "On your kids, I'm going to murder you next to your kids and make them watch." 2T. at 319; State's Exhibit 26-E. On December 31, 2022, Abdus-Salaam sent a text to E.R. about beating her face in and putting a Glock in her mouth. Id. at 323-324; State's Exhibit 26-G. On January 5, 2023, Abdus-Salaam chastised E.R. for hanging up on him telling her, "Today is the day I break your fucking jaw." 2T. at 325-326; State's Exhibit 26-H. On January 8, 2023, Abdus-Salaam texted E.R. "it gonna get worse for your fucking family." 2T. at 327; State's Exhibit 26-I.

{¶35} E.R. testified that it was Abdus-Salaam's voice calling the high school and making the bomb threats. 2T. at 226. E.R. admitted that she told Abdus-Salaam that she might ask to have the Protection Order dropped. 2T. at 248. She further admitted that she was with Abdus-Salaam around the time that he turned himself into the police. Id. at 255-256.

{¶36} State's Exhibit 4-B is a telephone call Abdus-Salaam made to E.R. from the jail on February 19, 2023 in which he tells her to say that she and Abdus-Salaam got married and their religion does not believe in protection orders. He further told E.R. to say she was pressured to obtain the protection order and also pressured to say that he called in the bomb threat to the high school.

**Abdus-Salaam Testifies at Trial**

{¶37} Abdus-Salaam took the stand in his own defense. He told the jury,

First thing I want to say is that I am totally guilty of Violation of Protection Orders, so I'm going to stay off that topic and go to - - and go to – the first thing I want to talk about is Inducing Panic.

3T. at 363. Abdus-Salaam argued that the state did not prove the call to the high school came from him or his phone. Id. at 363-364.

{¶38} Abdus-Salaam attempted to paint a picture for the jury that E.R. was not distressed and did not feel threatened by him because she continued to accept his phone calls, exchanged text messages with him, and even came to visit him at his parent's house and when he was in the hospital. Id. at 368. Abdus-Salaam told the jury that E.R. had taken out a protection order in the past, but had dropped it. Id. at 366 -367. He believed that she would do the same in this case, so that is why he continued to have contact with her. Id. Abdus-Salaam further testified that he never told E.R. not to testify or that he would harm her if she did. Id. at 369. He stated that he was not the only aggressor in the relationship. Id.

### The Jury Finds Abdus-Salaam Guilty

{¶39} On January 11, 2024, the state dismissed Count Twenty-two of the Indictment (Failure to Appear). The jury convicted Abdus-Salaam of the remaining charges. Sentencing was deferred and counsel was appointed to represent Abdus-Salaam during the sentencing hearing. 3T. at 489-490.

### Abdus-Salaam is Sentenced

{¶40} Sentencing took place on January 29, 2024. The trial judge merged Count Two [Menacing by Stalking] and Count Three [Menacing by Stalking]. Sent. T., Jan. 29, 2024 at 6. The state elected to proceed on Count Three. Id. The trial judge also merged

Count Four [Intimidation] and Count Five [Intimidation]. Id. at 5-6. The state elected to proceed on Count Five. Id. at 7. The trial judge further merged Count Six [Violating a Protection Order] with Count Seven [Violating a Protection Order], Count Eight [Violating a Protection Order] with Count Nine [Violating a Protection Order], Count Ten [Violating a Protection Order] with Count Eleven [Violating a Protection Order], Count Twelve [Violating a Protection Order] with Count Thirteen [Violating a Protection Order], Count Fourteen [Violating a Protection Order] with Count Fifteen [Violating a Protection Order], Count Sixteen [Violating a Protection Order] with Count Seventeen [Violating a Protection Order], Count Eighteen [Violating a Protection Order] with Count Nineteen [Violating a Protection Order], and Count Twenty [Violating a Protection Order] with Count Twenty-one [Violating a Protection Order]. Id at 7. The state chose to proceed on the even numbered counts. Id.

{¶41} During the hearing, the state introduced telephone calls made January 12, 2024 from the jail by Abdus-Salaam to a family member to show a lack of remorse. Sent. T. at 13-14;15. The calls were played for the trial judge. Id.

{¶42} The trial judge imposed the following sentence,

Count One – 4 years consecutive

Count Three – 18 months consecutive

Count Five – 18 months consecutive

Count Six, Eight, Ten, Twelve, Fourteen, Sixteen, Eighteen and Twenty – thirty-six months concurrent to each other but consecutive to the terms imposed in Count One, Three and Five. The stated prison term is an indefinite term of ten to twelve years.

Judgment Entry of Prison Sentence, filed Jan. 30, 2024 at 6.

## Assignments of Error

**{¶43}** Abdus-Salaam raises three Assignments of Error:

**{¶44}** "I. THE TRIAL COURT PLAINLY ERRED WHEN IT ALLOWED [E.R.] TO TESTIFY ABOUT ABDUS-SALAAM'S UNRELATED PRIOR BAD ACTS.

**{¶45}** "II. THE TRIAL COURT FAILED TO MERGE ABDUS-SALAAM'S CONVICTIONS FOR MENACING BY STALKING AND VIOLATION OF A PROTECTION ORDER.

**{¶46}** "III. THE TRIAL COURT FAILED TO PROPERLY ADVISE ABDUS-SALAAM OF HIS RIGHTS UNDER THE REAGAN TOKES STATUTE."

I.

**{¶47}** In his First Assignment of Error, Abdus-Salaam contends that the trial judge committed plain error by allowing the state to introduce his prior violent acts toward E.R., himself and others that occurred before the dates of the conduct alleged in the Indictment.

## Standard of Review

**{¶48}** "To establish plain error, [Abdus-Salaam] must show that an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis omitted.) *State v. McAlpin*, 2022-Ohio-1567, ¶ 66, *quoting State v. Rogers*, 2015-Ohio-2459, ¶ 22. *Accord State v. Bailey*, 2022-Ohio-4407, ¶ 8. These elements are "conjunctive," meaning "all three must apply to justify an appellate court's intervention." *Bailey* at ¶ 9, *citing State v. Barnes,* 94 Ohio St.3d 21, 27(2002). Intervention by an appellate court for plain error "is warranted only under exceptional circumstances to

prevent injustice." Id. at ¶ 8, *citing State v. Long*, 53 Ohio St.2d 91(1978), paragraph three of the syllabus.

{¶49} The main distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden. *See State v. Jones*, 2020-Ohio-3051, ¶ 17-18. Under plain-error review, the defendant bears the burden to demonstrate the requirements for review whereas under harmless-error review, the state bears the burden to demonstrate that the error did not affect the defendant's substantial rights. Id. at ¶ 17-18. *See, State v. Bond*, 2022-Ohio-4150, ¶7.

{¶50} In order to show that an error affected substantial rights, the defendant must demonstrate "a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis deleted.)  *State v. Rogers*, 2015-Ohio-2459, ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B)). *Bond* at ¶ 22.

*Evid.R. 404 – Other Acts Evidence*

{¶51} Evidence of a person's character is generally not admissible to prove that the person acted in conformity therewith on a particular occasion. Evid.R. 404(A). Likewise, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B) does allow "evidence of the defendant's other crimes, wrongs, or acts to be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The key is that the evidence must prove

something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22; *State v. Knuff,* 2024-Ohio-902, ¶115.

**{¶52}** When evidence is challenged as inadmissible other-acts evidence, a trial court must perform a three-step analysis:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

*State v. Williams*, 2012-Ohio-5695, ¶ 19-20; *see also Hartman* at ¶ 24-33; *Knuff* at ¶ 116.

**Issue for Appellate Review:** *Whether but for the admission of his past violent acts against the victim, himself or others, the jury would have acquitted Abdul-Salaam. Abdus-Salaam cannot demonstrate error with respect to the testimony about his prior acts*

**{¶53}** Abdus-Salaam complains that the jury heard evidence that he was violent toward E.R. from about six months after the couple began dating. He further contends the jury heard evidence that he was physically violent toward her and that he inflicted injury upon himself when she would threaten to end the relationship. Evidence was also

presented that he fought other individuals, and that he threatened her friends and family. Abdus-Salaam argues he was not charged with any physical violent conduct in the Indictment, making such evidence irrelevant and prejudicial.

{¶54} Abdus-Salaam was charge with Menacing by Stalking under R.C. 2903.11(B)(2)(b) [Count Two] and R.C. 2903.11(B)(2)(e) [Count Three]. R.C. 2903.11 provides in relevant part,

(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person…

(B) Whoever violates this section is guilty of menacing by stalking.

…

(2) Menacing by stalking is a felony of the fourth degree if any of the following applies:

…

(b) In committing the offense under division (A)(1), (2), or (3) of this section, the offender made a threat of physical harm to or against the victim, or as a result of an offense committed under division (A)(2) or (3) of this section, a third person induced by the offender's posted message made a threat of physical harm to or against the victim.

…

(e) The offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person.

{¶55}  The legislature has made the offender's history of violence and violent acts against the victim, a family or household member, or "any other person" expressly relevant to the charge by the inclusion of the chosen language in the statute.[6] *State v. Barnes,* 2019-Ohio-2634,¶ 35 (3rd Dist.); *State v. Braun,* 2018-Ohio-3628, ¶27 (11th Dist.); *State v. Granakis,* 2017-Ohio-8428, ¶27 (11th Dist.); *State v. Teal,* 2017-Ohio-7202, ¶24 (6th Dist.). The trial judge will determine if the alleged acts are to remote in time or so highly prejudicial to the charge that the evidence should be excluded at trial. *See, State v. Kroenberg*, 2018-Ohio-1962, ¶31 (8th Dist.) ("whether incidents should be deemed 'closely related in time' should be resolved by the trier of fact 'considering the evidence in the context of all the circumstances of the case.' *Middletown v. Jones*, 167 Ohio App.3d 679, 2006–Ohio–3465, 856 N.E.2d 1003 (12th Dist.), ¶ 10, *quoting State v. Honeycutt*, 2nd Dist. Montgomery No. 19004, 2002–Ohio–3490, ¶ 26, *citing State v. Dario*, 106 Ohio App.3d 232, 238, 665 N.E.2d 759 (1st Dist. 1995)").

{¶56}  In light of the language of the statute, we find that Abdus-Salaam has failed to demonstrate an obvious error in the admission of the evidence concerning his past violence toward E.R., her family, her friends or himself.

*Abdus-Salaam has not shown the requisite prejudice to demonstrate plain error.*

---

[6] *United States v. Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 446, 490 (2000). *See also, Ring v. Arizona*, 536 U.S. 584, 609 (2002) (Aggravating circumstance in a capital case are "'the functional equivalent of an element of a greater offense' that must be submitted to a jury. *quoting Apprendi* at 494, 120 S.Ct. 2348, fn. 19.).

**{¶57}** In the case at bar, considerable evidence was introduced concerning Abdus-Salaam's violent threats and conduct toward E.R., her family and her friends that *were* made during the times set forth in the Indictment. *See*, State's Exhibits 26(A) - (I); 2T. at 307; 315; 316; 318-319; 320-321; 324; 326-329.

**{¶58}** Abdus-Salaam does not explain how the testimony that he now complains of prejudiced him at trial in light of the other voluminous admissible evidence against him. Abdus-Salaam has thus failed to demonstrate a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial.

*Conclusion*

**{¶59}** We find that Abdus-Salaam has not demonstrated that any obvious error occurred in the admission of the evidence, or that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial. We decline to find a manifest injustice warranting the extraordinary step of finding plain error in the admission of Abdul-Salaam's past conduct.

**{¶60}** Abdus-Salaam's First Assignment of Error is overruled.

II.

**{¶61}** In his Second Assignment of Error, Abdus-Salaam contends the trial judge erred by failing to merge the Menacing by Stalking convictions with the convictions for Violating a Protection order because the charges are allied offenses of similar import.

**Standard of Review**

**{¶62}** We review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25. *State v. Williams*, 2012-Ohio-5699, ¶ 1; *State v. Bailey,* 2022-Ohio-4407, ¶6.

**{¶63}** Because Abdus-Salaam failed to preserve the issue of merger at trial, we review the issue for plain error. *See State v. Rogers*, 2015-Ohio-2459, ¶ 28 ("the failure to raise the allied offense issue at the time of sentencing forfeits all but plain error"); *Bailey,* 2022-Ohio-4407, ¶ 7.

*Allied-offenses of similar import – R.C. 2941.25*

**{¶64}** In Ohio, the legislative statement on multiple punishments is found in R.C. 2941.25, which provides:

(A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶65}** This test requires a court to ask three questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of [these questions] will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Ruff*, 2015-Ohio-995, ¶ 31. An allied-offenses analysis must be driven by the facts of each case. "[T]he analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because

an offense may be committed in a variety of ways and the offenses committed may have different import."  Id.

**{¶66}**  There are two circumstances in which offenses will be deemed dissimilar in import, making sentences for multiple counts permissible. The first circumstance is "[w]hen a defendant's conduct victimizes more than one person [because] the harm for each person is separate and distinct."  Id. at ¶ 26. The second circumstance is when a defendant's conduct against a single victim constitutes two or more offenses and "the harm that results from each offense is separate and identifiable from the harm of the other offense."  Id. Therefore, the Ohio Supreme Court has held that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable."  *Ruff* at ¶ 26. Whether the offenses have similar import will be revealed by "[t]he evidence at trial or during a plea or sentencing hearing."  Id.

**{¶67}**  In *State v. Whitfield,* the Ohio Supreme Court cautioned trial courts as follows,

> Because R.C. 2941.25(A) protects a defendant only from being punished for allied offenses, *the determination of the defendant's guilt for committing allied offenses remains intact, both before and after the merger of allied offenses for sentencing. Thus, the trial court should not vacate or dismiss the guilt determination.*

2010-Ohio-2, ¶26. Emphasis added.

**Issue for Appellate Review:** *Whether R.C. 2941.25 allows multiple sentences for menacing by stalking and violating a protection order in Abdus-Salaam's case*

{¶68} Abdus-Salaam was convicted of Menacing by Stalking under R.C. 2903.11(B)(2)(b) [Count Two] and R.C. 2903.11(B)(2)(e) [Count Three]. R.C. 2903.11 provides in relevant part,

(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person

…

(B) Whoever violates this section is guilty of menacing by stalking.

(2) Menacing by stalking is a felony of the fourth degree if any of the following applies:

(b) In committing the offense under division (A)(1), (2), or (3) of this section, the offender made a threat of physical harm to or against the victim, or as a result of an offense committed under division (A)(2) or (3) of this section, a third person induced by the offender's posted message made a threat of physical harm to or against the victim…

(e) The offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person.

**{¶69}** In addition, Abdus-Salaam was convicted of sixteen counts of Violating a Protection Order eight counts under R.C. 2919.27(B)(4) and eight counts under R.C. 2919.27(B)(3)(a):

(A) No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code;

…

(B)(1) Whoever violates this section is guilty of violating a protection order.

…

(3) Violating a protection order is a felony of the fifth degree if the offender previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for any of the following:

(a) A violation of a protection order issued or consent agreement approved pursuant to section 2151.34, 2903.213, 2903.214, 2919.26, or 3113.31 of the Revised Code;

…

(4) If the offender violates a protection order or consent agreement while committing a felony offense, violating a protection order is a felony of the third degree.

{¶70} Under the plain error standard of review, we must first find that there be an error—i.e., "'a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings.'" *Rogers,* 2015-Ohio-2459, ¶ 22, *quoting Barnes,* 94 Ohio St.3d at 27.

{¶71} In the case at bar, Abdus-Salaam admitted that he continued to text, call and send letters to E.R. after the issuance of a civil protection order. Not all of that contact was of a threatening tone. E.R. admitted to visiting Abdus-Salaam in the hospital. 2T. at 247. She further told Abdus-Salaam that she may asked to drop the civil protection order. Id. at 247-248. She admitted that she drove two hours to see Abdus-Salaam after the civil protection order was issued. Id. at 249. E.R. was with Abdus-Salaam around the time he turned himself in on the charges. Id. at 255-256. *See also*, 2T. at 231-235; State's Exhibit 4-B; 7-A; 7-B; 26-B.

{¶72} Violating a Protection Order does not require what the Menacing by Stalking charge does, i.e. evidence that Abdus-Salaam knowingly engaged in a pattern of conduct to cause E.R. to believe that he would cause physical harm to her or a family or household member or cause mental distress to E.R. or a family or household member of E.R. Abdus-Salaam violated the protection order by contacting E.R. He violated the Menacing by Stalking statute by, in addition to contacting her, causing E.R. to believe that he would cause physical harm to her or a family or household member. Thus, the charges, although similar, were committed with a separate animus or motivation.

{¶73} The plain-error test requires the error to be "obvious." Even if we were to assume that the trial court erred by not merging the menacing by stalking counts with the violating a protection order counts, the facts of the case indicate that such an error was not obvious. "Here, it is clear to us that in an area of law so driven by factual distinctions,

any asserted error was not obvious." *Bailey*, 2022-Ohio-4407, ¶29. Therefore, the facts here do not support a finding of an obvious defect in the trial proceedings that would constitute plain error.

*Conclusion*

**{¶74}** Because Abdus-Salaam failed to preserve the issue of merger of allied offenses by raising an objection in the trial court, he forfeited all but plain error. The law requires Abdus-Salaam to demonstrate a reasonable probability that his convictions constituted allied offenses of similar import, and he has failed to carry that burden. We decline to find a manifest injustice warranting the extraordinary step of finding plain error in the trial judge's sentencing of Abdus-Salaam on the menacing by stalking counts and violating the protection order counts.

**{¶75}** Abdus-Salaam's Second Assignment of Error is overruled.

III.

**{¶76}** In his Third Assignment of Error, Abdus-Salaam argues that his prison sentence is contrary to law because the trial judge failed at his sentencing hearing to provide him with all of the notifications required by R.C. 2929.19(B)(2)(c).

**Standard of Appellate Review**

**{¶77}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 2016-Ohio-1002, ¶22; *State v. Howell*, 2015-Ohio-4049, ¶31 (5th Dist.). R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B)

or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 2014-Ohio-3177, ¶28.

{¶78} "'Otherwise contrary to law' means "'in violation of statute or legal regulations at a given time.'"" *Jones* at ¶ 34 quoting Black's Law Dictionary (6th Ed. 1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable. *State v. Bryant*, 2022-Ohio-1878, ¶22.

**Issue for Appellate Review:** *Whether the trial judge gave Abdus-Salaam all five notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing*

**Reagan Tokes - R.C. 2929.19(B)**

{¶79} R.C. 2929.19(B)(2)(c) provides that "if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing

held under section 2967.271 of the Revised Code, the department makes

specified determinations regarding the offender's conduct while confined,

the offender's rehabilitation, the offender's threat to society, the offender's

restrictive housing, if any, while confined, and the offender's security

classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the

department at the hearing makes the specified determinations and rebuts

the presumption, the department may maintain the offender's incarceration

after the expiration of that minimum term or after that presumptive earned

early release date for the length of time the department determines to be

reasonable, subject to the limitation specified in section 2967.271 of the

Revised Code;

(iv) That the department may make the specified determinations and

maintain the offender's incarceration under the provisions described in

divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to

the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration

of the offender's maximum prison term imposed as part of the sentence, the

offender must be released upon the expiration of that term.

{¶80} By indicating that the sentencing court "shall do all of the following" and

"notify the offender of all of the following," the legislature clearly placed a mandatory duty

upon the trial court rather than granting it discretion. Thus, when sentencing an offender

to a non-life felony indefinite prison term under the Reagan Tokes Law, a trial court must

advise the offender of all five notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing to fulfill the requirements of the statute. *State v. Wolfe*, 2020-Ohio-5501, ¶ 36 (5th Dist.); *State v. Hodgins*, 2021-Ohio-1353, ¶12 (12th Dist.). While the trial court is not required to recite the statutory language verbatim in providing the notifications to the defendant at sentencing, the record must nonetheless reflect that each of the necessary notifications were provided. *State v. Brown*, 2021-Ohio-2291, ¶17 (12th Dist.). *State v. Miles*, 2020-Ohio-6921, ¶ 20, 27-31 (11th Dist.); *State v. Long* 2021-Ohio-2672, ¶ 27-29 (4th Dist.); *State v. Whitehead*, 2021-Ohio-847, ¶ 43, 45-46 (8th Dist.); *State v. Hodgkin*, 2021-Ohio-1353, ¶ 24-25 (12th Dist.).

{¶81} In the case at bar, the trial judge advised Abdus-Salaam as follows,

In terms of the Tokes' sentence, Count 1 is a Senate Bill 201 sentence with a minimum prison term by virtue of the 4-year minimum prison term. The maximum prison term on Count 1 would be 6 years.

There's a rebuttable presumption that he'll be released when he serves the minimum term here and that that presumption can be rebutted by ODRC, and Mr. Salaam can be maintained for reasonable periods up to the maximum term if ODRC makes the appropriate determinations.

He is eligible for earned credit. This is not a mandatory prison term at all in any sense. So, he is eligible for up to 15 percent off of his sentence for exceptional conduct while incarcerated. He's also eligible for earned credit of up to 8 percent off of the minimum sentence for participating in constructive programming.

Sent. T. Jan. 29, 2024 at 23-24.

**{¶82}** We find that the trial judge failed to advise Abdus-Salaam of all of the required notifications set forth in R.C. 2929.19(B)(2)(c). Specifically, the trial judge failed to advise Abdus-Salaam that: (1) the ODRC must hold a hearing to rebut the presumption that appellant would be released after serving his mandatory minimum sentence; (2) the ODRC could maintain appellant's incarceration more than one time; and (3) the ODRC may make specified determinations regarding his conduct while confined, his rehabilitation, his threat to society, his restrictive housing, if any, while confined, and his security classification in rebutting the presumption.

**{¶83}** In *State v. Brown Suber*, 2021-Ohio-2291(12th Dist.), the trial court provided some of the required notifications but failed to notify the defendant that:

> (1) the DRC must hold a hearing to rebut the presumption that appellant would be released after serving his mandatory minimum sentence of 10 years; (2) the DRC could maintain his incarceration after the expiration of the minimum term for the length the DRC determines is reasonable, subject to his maximum penalty of 15 years; and (3) the DRC could maintain appellant's incarceration more than one time.

Id. at ¶ 17. The Court reversed and remanded for the trial court to provide the required notifications. Id. at ¶ 18. The Court noted that "[t]he failure to advise the defendant of *any* of the five notifications constitutes error and a remand for the limited purpose of permitting the sentencing court to provide the mandatory notifications required by R.C. 2929.19(B)(2)(c) is necessary." (Emphasis added.) [*Brown Suber*, 2021-Ohio-2291, ¶16], *citing State v. Paul*, 12th Dist. Clinton No. CA2020-08-010, 2021-Ohio-1628, ¶ 22-23."

*See also, State v. Pope*, 2022-Ohio-426, ¶18 (12th Dist.); *State v. Massie*, 2021-Ohio-3376, ¶29 (2nd Dist.).

**{¶84}** As such, Abdus-Salaam's Third Assignment of Error is sustained and this matter is remanded for the sole purpose of providing him with the required notifications as set forth in R.C. 2929.19(B)(2)(c).

**{¶85}** However, we emphasize that our reversal and remand are only for the purpose of complying with the foregoing statute and in no way affect the validity of the underlying conviction or any other aspect of the sentence imposed by the trial judge. In other words, Abdus-Salaam is not entitled to be sentenced anew and the matter is remanded to the trial judge for the sole and limited purpose of providing the mandatory notifications of R.C. 2929.19(B)(2)(c). *See, State v. Pope,* 2022-Ohio-426, ¶23 (12th Dist.); *State v. Greene,* 2022-Ohio-4536, ¶10 (1st Dist.); *State v. Tupps,* 2023-Ohio-2097, ¶38 (3rd Dist.); *State v. Wolfe,* 2020-Ohio-5501, ¶37 (5th Dist.); *State v. Gates,* 2022-Ohio-1666, ¶27 (8th Dist.).

## Conclusion

**{¶86}** Abdus-Salaam's First and Second Assignments of Error are overruled. Abdus-Salaam's Third Assignment of Error is sustained and we remand this matter solely for purposes of providing the proper R.C. 2929.19(B)(2)(c) notifications.

**{¶87}** This decision in no way affects the guilty verdicts and sentences issued by the jury on any count of the indictment. It only affects the sentence with the sole purpose of providing Abdus-Salaam with the required notifications as set forth in R.C. 2929.19(B)(2)(c).

{¶88}  The decision of the Delaware County Court of Common Pleas is affirmed in all other respects.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur.