[Cite as *State v. Hill*, 2024-Ohio-522.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023-CA-00028 |
| JODI HILL | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield Municipal Court,
                             Case No. TRC 22-06918

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      February 12, 2024

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

ANDREW D. SEMELSBRGER                  SCOTT P. WOOD
Assistant Prosecutor                   Conrad & Wood
136 West Main Street                   120 East Main Street, Ste. 200
Box 1008                               Lancaster, OH 43130
Lancaster, OH 43130

*Gwin, J.,*

{¶1} Defendant-appellant Jodi Hill [Hill] appeals the May 3, 2023 Judgment Entry of the Fairfield County Municipal Court, Fairfield, Ohio overruling her motion to suppress.

*Facts and Procedural History*

{¶2} On August 14, 2022 at approximately 2:27 a.m., Hill was stopped in her motor vehicle by Trooper Tawanna L. Young of the Ohio State Highway Patrol and ultimately charged with OVI, in violation of R.C. 4511.19(A)(1)(a), and a violation of R.C. 4511.12, disobeying a traffic control device.

{¶3} On September 6, 2022 and October 21, 2022, two additional OVI charges were filed against Hill based on the results of a urine test that was taken at the time of her arrest.

{¶4} On January 13, 2023, with leave of the trial court, Hill filed a motion to suppress challenging, among other things, her initial stop by law enforcement. On April 5, 2023, an oral hearing was held wherein Hill stated the only issue before the trial court is "whether or not there was reasonable suspicion to stop [Hill's] vehicle." T. Supp. Hearing at 4.

{¶5} Trooper Young was the only witness to testify at the hearing on Hill's motion to suppress. A video of the traffic stop was also entered into evidence. At the conclusion of the oral hearing, the trial court took the matter under advisement.

{¶6} On May 3, 2023, the trial court issued a written decision overruling Hill's motion to suppress, finding that there was reasonable suspicion of unlawful activity to justify the traffic stop by Trooper Young. The trial court found the following facts, as recounted in the Suppression Entry.

{¶7} On Sunday, August 14, 2022, at approximately 2:27 a.m., Trooper Young was on patrol traveling eastbound on Wheeling Street, Lancaster, Fairfield County, Ohio. Hill's car was not on Wheeling Street at this time. Trooper Young turned left onto North Columbus Street, headed northbound. After covering the length of one block, the trooper made a U-turn on North Columbus Street, now headed southbound on North Columbus Street. This time, when Trooper Young passed the intersection of North Columbus Street and Wheeling Street, the trooper observed Hill's car at a red light at the intersection of Wheeling Street and Memorial Drive, headed westbound on Wheeling Street.

{¶8} Nearing the intersection of North Columbus Street and Main Street, Trooper Young turned right onto Main Street, heading westbound. As Trooper Young approached the intersection of Main Street and Memorial Drive, the trooper was able to observe that the traffic light for Wheeling Street, the street at which Hill's car was stationary, was now green. Trooper Young testified that she, Trooper Young, also had a green light while westbound on Main Street.

{¶9} The trooper then turned right onto Memorial Drive, headed northbound towards the intersection of Wheeling Street and Memorial Drive. As Trooper Young turned onto Memorial Drive, the trooper saw that her light (i.e., the northbound light on Memorial Drive at the intersection of Wheeling Street and Memorial Drive) was red, which confirmed that Hill had a green light. As Trooper Young got closer to the intersection of Wheeling Street and Memorial Drive, Hill's vehicle began to move, turning left onto Memorial Drive, headed southbound.

{¶10} The trial court reviewed the video of the traffic stop and made the following findings,

1. At 02:26:21 Young sees Defendant's vehicle headed west on Wheeling Street sitting stationary at the red light.

2. At 02:26:37 Young turns westbound onto Main Street and her light at the intersection of Main Street and Memorial Drive is red.

3. At 02:26:42 Young's light on Main Street heading westbound turns green. Young's dash-cam video shows Young is in a position to see Defendant's vehicle and the green light for her at the intersection of westbound Wheeling Street and Memorial Drive through the open surface parking lot of FCJFS, but the dash-cam video does not show that view.

4. At 02:26:57 Young turns right onto Memorial Drive heading northbound and can again see Defendant's vehicle sitting at the green light. Young's dash-cam video is showing Young's light as red so Defendant has the green light.

5. At 02:27:02 Defendant's vehicle begins to move and makes a left turn onto Memorial Drive heading southbound.

{¶11} Based on the dash-cam video evidence above and Trooper Young's testimony, the trial judge found that Hill's car sat stationary at a green light for approximately twenty seconds (02:26:42 to 02:27:02) before moving.

{¶12} On June 20, 2023, Hill entered a no contest plea and was found guilty of the impaired OVI charge as a stipulated first offense, with a dismissal of all other charges, and was sentenced by the trial court.

*Assignment of Error*

{¶13} Hill raises one Assignment of Error,

{¶14} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

*Law and Analysis*

{¶15} In her sole Assignment of Error, Hill contends that the trial judge erred in overruling her motion to suppress, as there was no reasonable suspicion of any unlawful activity to justify the traffic stop.

**Standard of Review**

{¶16} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra.

Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**Issue for Appellate Review:** *Whether the Trooper had either probable cause or a reasonable and articulable suspicion to initiate a traffic stop of Hill's vehicle.*

{¶17} We will first consider whether the facts in the instant case demonstrate that Trooper Young had probable cause to initiate a traffic stop of Hill's vehicle. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8.

{¶18} The Supreme Court of Ohio has observed, "'[a]uthorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop.'" *City of Bowling Green v. Godwin,* 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 13, *quoting Gaddis ex rel. Gaddis v. Redford Twp.*, 188 F.Supp.2d 762, 767(E.D. Mich. 2002).

{¶19} There are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it. In *State v. Moller*, the Court of Appeals observed,

First is the typical non-investigatory traffic stop, wherein the police officer witnesses a violation of the traffic code, such as crossing over the centerline of a road, and then stops the motorist for this traffic violation. Second is the investigative or "*Terry*" stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. *See Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-1880 [20 L.Ed.2d 889]. A non-investigatory traffic stop must be supported by

probable cause, which arises when the stopping officer witnesses the traffic violation. *See Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 [135 L.Ed.2d 89]; *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332 [54 L.Ed.2d 331]. By contrast, an investigatory *Terry* stop is proper so long as the stopping officer has "reasonable articulable suspicion" of criminal activity. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879-1880.

12th Dist. Butler No. CA99-07-128, 2000 WL 1577287 (Oct. 23, 2000); *Accord, State Oliver,* 10th Dist. Franklin No. 21 AP-449, 2023-Ohio-1550, ¶42; *State v. Baughman,* 192 Ohio App.3d 45, 2011-Ohio-162, 947 N.E.2d 1273 (12th Dist.), ¶ 14; *State v. Nwachukwa*, 3rd Dist. Marion No. 9-15-03, 2015-Ohio-3282, ¶ 24; ¶ 26; *State v. Woods*, 5th Dist. Licking No. 18-CA-13, 2018-Ohio-3379, 117 N.E.3d 1017, ¶14.

{¶20} The cause for a non-investigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]" *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-21, 665 N.E.2d 1091 (1996). Probable cause is defined in terms of "facts or circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975), *quoting Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

{¶21} The cause for an investigatory stop was stated by the Supreme Court in *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204. In *Mays,* the defendant argued that his actions in the case – twice driving across the white edge line –

were not enough to constitute a violation of the driving within marked lanes statute, R.C. 4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17. The Supreme Court concluded that a law-enforcement officer who witnesses a motorist drift over lane markings in violation of a statute that requires a driver to drive a vehicle entirely within a single lane of traffic has reasonable and articulable suspicion sufficient to warrant a traffic stop, even without further evidence of erratic or unsafe driving. Id. at syllabus. In *Mays*, the Ohio Supreme Court made the following observation as it pertains to Ohio law,

> Appellant's reliance on [*Dayton v.*] *Erickson* [76 Ohio St.3d 3, 665 N.E.2d 1091 (1996)], and in *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a

preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. The Ohio Supreme Court concluded, therefore, if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. 119 Ohio St.3d 406, ¶8. *See, State v. Marcum*, 5th Dist. Delaware No. 18-CAC-11 0083, 2019-Ohio-2293.

{¶22} The confusion in this area remains. In a case involving a crossing of the fog line, the single solid white line on the right-hand edge of a roadway, the Supreme Court of Ohio recently ruled that the statute prohibits crossing, but not touching, of a fog line. *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶ 3. Turner argued the traffic stop was invalid because the tires touched, but did not cross the fog line. The Supreme Court found the pertinent question here, however, is not whether Turner was guilty of the marked lanes violation but, rather, whether the officer believes a traffic law has been violated. In that analysis, the focus of the inquiry is whether the officer had "probable cause to believe that a traffic violation has occurred. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, 170 N.E.3d 842, ¶ 2

{¶23} *Non-Investigatory Stop.* The initial question to be addressed is whether the traffic stop was justified as a non-investigatory stop because Trooper Young actually

witnessed, or had a reasonable basis to believe she had witnessed, Hill disobeying a traffic control device in violation of R.C. 4511.12. At the suppression hearing the trooper indicated that she initiated a traffic stop because Hill's vehicle had remained stationary at a green light for an undue length of time. T. Supp. Hearing at 6-9. A citation was issued for the traffic violation.

{¶24} Accordingly, we will first confine our analysis of the traffic stop in this case to the "typical non [-] investigatory stop that officers perform after witnessing specific traffic violations, premised on probable cause." *State v. Hampton*, 1st Dist. No. C-210423, 2022-Ohio-1380, 2022 WL 1231755, ¶ 8; *State Oliver,* 10th Dist. Franklin No. 21 AP-449, 2023-Ohio-1550, ¶51.

{¶25} The trial judge found that Hill remained motionless at the green light for a period of twenty seconds. Revised Code 4511.13 defines the meanings of different traffic signal indications. Division (A) defines what a steady green signal means:

{¶26}  Steady green signal indication:

(1)(a) Vehicular traffic, streetcars, and trackless trolleys facing a circular green signal indication are permitted to proceed straight through or turn right or left or make a U-turn movement except as such movement is modified by a lane-use sign, turn prohibition sign, lane marking, roadway design, separate turn signal indication, or other traffic control device. Such vehicular traffic, including vehicles turning right or left or making a U-turn movement, shall yield the right-of-way to both of the following:

Pedestrians lawfully within an associated crosswalk;

Other vehicles lawfully within the intersection.

**{¶27}** Hill is correct that a green light is not an unconditional command to proceed. The statute directs a driver to yield to pedestrians and other vehicles, and provides exceptions for the modification of an unconditional command to proceed. Thus, a failure to proceed through a green light is not automatically a traffic violation. We are unwilling to state a bright-line rule as to how long is too long to remain stopped at a green traffic light. Each case will necessarily turn on its own facts.

**{¶28}** *Investigatory Stop.* Due to the ambiguity as to whether Hill had in fact violated the statute, the trial judge considered whether the traffic stop was justified as an *investigatory* stop because Trooper Young had a reasonable basis to suspect that Hill had violated the disobeying a traffic control device statute sufficient to allow Trooper Young to stop Hill to confirm or refute (i.e., investigate) this suspicion of criminal activity, including the traffic violation. *See, e.g., State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4538, 894 N.E.2d 1204; *State v. Chambers,* 5th Dist. No. 2019 AP 07 0021, 2020-Ohio-1483, ¶ 23, *citing Terry*, 392 U.S. at 21, 88 S.Ct. 1868. *See also Dayton v. Erickson,* 76 Ohio St.3d 3, 6, 665 N.E.2d 1091 (1996); *State v. Howell*, 1st Dist., 2018-Ohio-591, 106 N.E.3d 337, ¶ 12.

**{¶29}** The trial judge viewed the trooper's actions under the totality of the circumstances that were present to her at the time,

> In the present case, the Court cannot say that Young was actually mistaken as to the law. As the State asserted in its Post-Suppression Hearing Closing Arguments everyone knows that "green means go." This incident occurred at 2:27 a.m. on a Sunday morning wherein Young observed Defendant sit at a green light for approximately twenty (20)

seconds before moving. Young's dash-cam video shows there are only three vehicles on the roadway during the entire duration of this incident. Defendant's vehicle is sitting at a red light at an intersection with no other vehicles around her. Defendant had no pedestrians or vehicles to wait for before turning left onto Memorial Drive when the light turned green. There were no vehicles approaching the intersection on Memorial Drive that Defendant needed to yield to or wait to see if they, in fact, stopped at the red light. There was no other vehicular or pedestrian traffic to prevent Defendant from proceeding when the light turned green.

{¶30} On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992), *citing State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). *In Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 81, 461 N.E.2d 1273(1984), the Ohio Supreme Court explained:

> A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *See, also State v. DeHass* (1967), 10 Ohio St.2d 230, syllabus 1.

{¶31} *See also, State v. Roberts,* 5th Dist. Stark Nos. 2019CA00143, 2019CA00144, 2020-Ohio-3295, ¶12.

{¶32} Based on our independent review of the cruiser camera video, and in light of Trooper Young's unrefuted testimony found by the trial court to be credible, we find that competent, credible evidence supports the finding that the stop was justified as an investigatory stop because Trooper Young had a reasonable and articulable suspicion that Hill disobeyed a traffic control device. The facts known to the trooper were sufficient under the facts of this case to allow Trooper Young to stop Hill to confirm or refute (i.e., investigate) the suspicion that Hill disobeyed a traffic control device.

{¶33} Hill's sole Assignment of Error is overruled

{¶34} The judgment of the Fairfield Municipal Court, Fairfield County, Ohio is affirmed.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur