[Cite as *State v. Shannon*, 2025-Ohio-1224.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
|  |  | Hon. Robert G. Montgomery, P. J. |
| STATE OF OHIO | : | Hon. Kevin W. Popham, J. |
|  | : | Hon. David M. Gormley, J. |
| Plaintiff-Appellee | : |  |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 24CA000020 |
| CHARLES SHANNON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Knox County Court of
Common Pleas, Case No. 23CR12-0299

JUDGMENT:                             Affirmed

DATE OF JUDGMENT ENTRY:       April 7, 2025

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CHARLES T. MCCONVILLE              TODD W. BARSTOW
Prosecuting Attorney                     15 N. Park Place
BY: NICOLE E. DERR                      Newark, OH 43055
117 East High Street, Ste. 234
Mount Vernon, OH 43050

*Popham, J.,*

**{¶1}** Defendant-appellant Charles M. Shannon ["Shannon"] appeals from the April 29, 2024, Decision and Entry of the Knox County Court of Common Pleas overruling his motion to suppress.

*Facts and Procedural History*

**{¶2}** On December 18, 2023, Shannon was indicted for two counts of having weapons while under disability, felonies of the third degree in violation of R.C. 2923.13(A)(3), one count of aggravated possession of drugs, a felony of the fifth degree in violation of R.C. 2925.11(A), and one count of possessing criminal tools, a felony of the fifth degree in violation of R.C. 2923.24(A). The having weapons while under disability charges each carried a forfeiture specification pursuant to R.C. 2941.1417.

**{¶3}** On February 9, 2024, Shannon filed a motion to suppress. On April 25, 2024, an evidentiary hearing was held on the motion. Prior to the start of the hearing, Shannon agreed that the scope of the evidentiary hearing was limited to "contesting the search warrant and the PC for the search warrant." Supp. T. at 5.

**{¶4}** Knox County Sheriff's Detective Terry Wolfe testified that he began an investigation of Shannon around the end of July or beginning of August 2023. During that time, Detective Wolfe received information from a confidential source that Shannon was transporting drugs from his residence in Columbus to a residence on Howard Street in Mount Vernon, Ohio. Detective Wolfe described the source as one that he "used on multiple occasions [and] that was reliable." Supp. T. at 9. Detective Wolfe testified that he was aware that Shannon was originally from Mount Vernon, Ohio, and he had family, including a child, living in the Mount Vernon area. Supp. T. at 29; 31. Detective Wolfe

testified that during his investigation of Shannon, the detective utilized five confidential informants. Supp. T. at 40 - 41.

{¶5} Based upon those conversations, Detective Wolfe began watching the residence. Detective Wolfe testified that he did "see signs of drug sells from the residence." *Id.* at 9 - 10. Detective Wolfe subsequently made a traffic stop on a car leaving the residence and found drugs inside that car. *Id.* at 10. Detective Wolfe obtained a description of the vehicle Shannon was driving; however, during two traffic stops of Shannon's vehicle "no narcotics were located." Supp. T. at 10.

{¶6} Detective Wolfe obtained Shannon's phone number and applied for a search warrant for the phone. The warrant was granted, and Detective Wolfe began to "ping" Shannon's phone to track his movements. *Id.* at 10-11. He also obtained a GPS warrant for Shannon's vehicle, which he executed while Shannon was attending his weekly visitation with his child in Knox County.

{¶7} From the GPS tracker, Detective Wolfe learned Shannon, while coming to Knox County from Columbus, would stop at one or two storage unit facilities. Supp. T. at 13. On November 27, 2023, Detective Wolfe observed Shannon inside the business part of a storage unit facility talking to a female employee. *Id.* That employee gave Detective Wolfe "Unit A-020," as the number of Shannon's storage unit, which Shannon had rented that day. *Id.* at 14; 16; *Affidavit for Warrant to Search,* ¶ 21.

{¶8} Detective Wolfe testified that the storage facility where Shannon's unit was located is a private facility, surrounded by an 8 to 10-foot-high fence. Supp. T. at 32. Further, the facility is gated, requiring a code or a pass key to enter the property to access

the storage units. *Id.* Detective Wolfe was given the pass code and permission to enter the facility by an employee. *Id.* at 33.

**{¶9}** Detective Wolfe further testified that he "had gotten some information from a source who stated that "Chuck was carrying a gun, I believe it was a Smith & Wesson, was what I was told." Supp. T. at 14.

**{¶10}** Detective Wolfe testified that he placed a camera in a tree looking down onto Shannon's storage unit. *Id.* However, through a series of technical missteps, no video footage of Shannon entering or leaving the storage unit was obtained or preserved. *Id.* at 15; 17; 34 - 35. However, Detective Wolfe testified that while watching the live video feed of Shannon's storage unit on November 28, 2023, he observed Shannon place two large duffle bags and "a large case that looked like a gun case" in Unit A-020. *Id.* at 16.

**{¶11}** On December 4, 2023, Detective Wolfe asked Knox County Sheriff Deputy Luke Guthrie to run his canine partner "Feyd" around the storage facility. *Affidavit for Warrant to Search,* ¶ 25. Detective Wolfe did not provide the canine handler Shannon's unit number. Supp. T. at 17. The dog alerted to the presence of the odor of narcotics outside the closed door of Shannon's unit.

**{¶12}** Detective Wolfe obtained a search warrant for Shannon's unit. Inside, he located two firearms, "a Smith & Wesson" and what "appeared to be a long gun," baggies containing narcotics residue, and drug paraphernalia. Supp. T. at 18 - 19.

**{¶13}** At the conclusion of the hearing Shannon again told the judge that he was only contesting the "basis for the issuance of the warrant[.]" Supp. T. at 43.

**{¶14}** The trial judge denied Shannon's motion to suppress through a Decision and Entry filed April 29, 2024.

**{¶15}** Shannon entered a no contest plea to one count of having weapons while under disability, as well as the forfeiture specifications to count one and count two of the indictment. Plea T. at 3; 14-15. The remaining counts of the indictment were dismissed upon motion of the state. *Amended Journal Entry*, filed July 17, 2025. Sentencing was deferred and the preparation of a Presentence Investigation Report was ordered. On July 18, 2024, the judge sentenced Shannon to thirty months in prison on count one of the Indictment and ordered forfeiture of the weapons to the Knox County Sheriff.

*Assignment of Error*

**{¶16}** Shannon raises one Assignment of Error,

**{¶17}** "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT DENYING HIS MOTION TO SUPPRESS."

*Law and analysis*

**{¶18}** Shannon contends that the trial judge erred in not granting his motion to suppress because the affidavit in support of the search warrant, while based upon reasonable suspicion, is not based upon probable cause.

**Standard of Review**

**{¶19}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial judge assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See, Burnside; Dunlap; State v. Long*, 127 Ohio App.3d 328,

332 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142 (4th Dist. 1996); *State v. Hill,* 2024-Ohio-522, ¶ 16 (5th Dist.). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See, Burnside, citing State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266 (2002), *overruled in part on* separate *grounds by Davis v. Washington, 547 U.S. 813 (2006) as stated in United States v. Idleman, 2018 WL 4677859 (N.D.W.Va. July 16, 2018) and State v. Strong, 2019-Ohio-2888, ¶ 19 (4th Dist.)*; *Ornelas v. United States*, 517 U.S. 690 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas,* 517 U.S. at 698.

*The search warrant*

**{¶20}** In addressing the substance of Shannon's assignment of error, we begin with Criminal Rule 41, which governs the issuance and execution of search warrants in Ohio. Subsection (C) of the rule reads, in pertinent part:

> (1) A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant. In the case of a search warrant, the affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized,

state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located….

(2) If the judge is satisfied that probable cause exists, the judge shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched or the person or property to be tracked…*The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished….* (Empasis added).

{¶21} In reviewing the affidavit in this case, we are guided by the following instruction from the Ohio Supreme Court,

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*State v. George*, 45 Ohio St.3d 325, 330 (1989), paragraph two of the syllabus, *citing Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). Trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *George*,

45 Ohio St.3d at 329, *citing Gates*, 462 U.S. at 238-239.  *See also, State v. Norman*, 2011-Ohio-568, ¶ 33 (5th Dist.).

**{¶22}**  "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, *including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information,* there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (Emphasis added). *George,* 45 Ohio St.3d 325 at paragraph one of the syllabus, *quoting Gates*, 462 U.S. at 238 - 239.

**{¶23}**  Shannon contends that Detective Wolfe's affidavit was lacking in facts necessary to support a finding of a fair probability that contraband or evidence of a crime would be found in the storage locker. He argues that the reliability of Detective Wolfe's confidential sources "must be seriously questioned" because, based upon those sources, law enforcement in Knox County conducted two traffic stops of Shannon's vehicle and found neither drugs or weapons in Shannon's possession. *See* Appellant's brief at 2. Shannon further contends that Detective Wolfe never actually saw Shannon in possession of drugs or weapons, only what "looked like" a gun case. Further, no corroborating evidence such as photographs, documents or statements were alluded to in the affidavit, nor did the affidavit state that any confidential source purchased drugs from Shannon. *Id.*

**Issue for Appellate Review:** W*hether the record contains* a *substantial basis for finding that, under the totality of the circumstances, the judge had sufficient*

*probable cause to believe that contraband or evidence of a crime would be found in*

*Shannon's storage locker*

*Probable cause*

**{¶24}** In *State v. Perez*, the Ohio Supreme Court defined probable cause,

> "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States* (1959), 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams* (1972), 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612. Rather, probable cause is a "practical, nontechnical conception," *Brinegar v. United States* (1949), 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879, that "turn[s] on the assessment of probabilities in particular factual contexts." *Illinois v. Gates* (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527.

2009-Ohio-6179, ¶ 73. The *Gates* decision provides considerable elaboration on the "fair probability" standard applicable to the magistrate's probable cause determination,

> Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. * * * [I]t is clear that "*only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.*" *Spinelli*, 393 U.S., at 419, 89 S.Ct. at 590–591. See Model Code

of Pre–Arraignment Procedure § 210.1(7) (Prop. Off. Draft 1972); 1 W. LaFave, Search and Seizure § 3.2(e) (1978). (Emphasis added.) *Illinois v. Gates* at 462 U.S. at 235.

*Hearsay and Informant Reliability*

**{¶25}** Criminal Rule 41 (C)(2) specifically provides, "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Therefore, hearsay may serve as the basis for the issuance of a warrant if there is a substantial basis for crediting the hearsay. *United States v. Ventresca*, 380 U.S. 102, 108 (1965). In *Aguilar v. Texas,* 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), the United States Supreme Court set forth a two-pronged test to determine whether an informant's tip establishes probable cause to issue a warrant. Under that test, a magistrate must be informed of: (1) the basis of the informant's knowledge; and (2) sufficient facts to establish either the informant's veracity or the reliability of the informant's information. *Aguilar* at 114; *Spinelli* at 413. *See also State v. Stubbs*, 2020-Ohio-3464, ¶ 22 (5th Dist.). However, in determining whether there is probable cause for the issuance of a warrant, courts employ a "totality-of-the-circumstances" test. *State v. George*, 45 Ohio St.3d 325, 329 (1989), *quoting, Illinois v. Gates*, 462 U.S. 213, 238 (1983). It would certainly appear as though Criminal Rule 41(C)(2) is a holdover of the *Aguilar-Spinelli* test. *See George*, 45 Ohio St.3d at 329 - 330 (discussing the "totality of the circumstances" test).

**{¶26}** In *Gates*, the United States Supreme Court abandoned the *Aguilar-Spinelli* test in favor of a traditional "totality of the circumstances" test for probable cause. *Gates,*

462 U.S. at 238. Thus, an affidavit must be "[considered] in its entirety, giving significance to each relevant piece of information and balancing the relative weights of all the various indicia of reliability (and unreliability) attending the tip." *Massachusetts v. Upton*, 466 U.S. 727, 732 (1984). No single piece of evidence in the affidavit is conclusive. But if the pieces fit neatly together and, so viewed, support the judge's determination that there was "a fair probability that contraband or evidence of a crime" would be found, then the affidavit provides a substantial basis for the issuance of the warrant. 466 U.S. at 733. Further, independent corroboration by the police of a confidential source's information will lend some degree of reliability to the other allegations made by the source. *Alabama v. White,* 496 U.S. 325, 332 (1990); *State v. Evans*, 67 Ohio St.3d 405, 411 (1993).

{¶27} In the case at bar, the affidavit contained no statements providing indicia of either the veracity of the confidential sources or the basis of their knowledge. We have no idea from the affidavit whether the sources have been proven reliable. Nevertheless, the information contained in paragraph 5 (confidential source #1), paragraphs 8, 10, and 11 (confidential source #2), and paragraph 16 (confidential source #3) of his affidavit provide sufficient grounds for Detective Wolfe to continue to investigate the claims made that Shannon is bringing drugs from Columbus to Knox County. Further, in paragraph 20 (confidential source #4) states that "Shannon was carrying a Smith and Wesson 500 handgun on his right hip." The confidential source personally told Detective Wolfe this information. The level of detail, i.e., the make of the handgun and how Shannon carries it, implies personal observation or knowledge on the part of the confidential source.

{¶28} Detective Wolfe in reliance, at least in part, on these statements, obtained two search warrants, the "ping" warrant and a GPS warrant. Shannon does not contest the legality of these two warrants.

{¶29} Detective Wolfe was able to independently verify parts of the information he had been given by his sources. Detective Wolfe was able to track Shannon to a residence where confidential source #2 informed him Shannon had "dropped off a large amount of meth." *Affidavit for Warrant to Search,* ¶¶ 11; 19. Further, Detective Wolfe was able to confirm by GPS tracking that Shannon had been at a residence where confidential source #5 is said to have seen Shannon deliver "large amounts of methamphetamine." *Id.* at ¶ 22.

{¶30} As a result of the information obtained from his sources, the "ping" warrant, and the GPS warrant, Detective Wolfe learned that Shannon had rented the storage unit A-020. He then set-up video surveillance and observed Shannon arrive at the unit on November 28, 2023 and "put two large duffle bags and a large case that looked like a gun case inside the unit." *Id.* at ¶ 24. Detective Wolfe arranged for Deputy Guthrie and his canine partner to conduct a free air sniff around the storage unit. Detective Wolfe indicated, "K9 Feyd gave a change of behavior to indicate the presence of narcotics at the door to Unit A-020." *Id*. at ¶ 25.

*Canine alert outside of a closed door of a commercial storage unit, with the*

*canine legally positioned in the area accessible to the unit facility's employees and*

*anyone renting one of the units in the facility, is not a "search," for Fourth Amendment*

*purposes*

{¶31} In *United States v. Place*, 462 U.S. 696 (1983), the United States Supreme Court suggested that the question of whether a dog sniff is a search depends in part on the level of the person's expectation of privacy in the place where the dog sniff occurs, and in part on the level of intrusiveness of the dog sniff. The Court held that because a traveler's expectation of privacy in a public airport is limited, and a trained drug-detection dog sniff is only minimally intrusive, a dog sniff of a traveler's luggage in a public place was not a search under the Fourth Amendment. 462 U.S. at 707. The Court acknowledged that a person has a reasonable expectation of privacy in luggage contents but held that there is no such expectation in scents that may be detected at the luggage's exterior. *Id.*

{¶32} As for the intrusiveness of a dog sniff, the Supreme Court observed that a dog sniff "discloses only the presence or absence of narcotics, a contraband item." *Place*, 462 U.S. at 707. A dog sniff was described as "*sui generis*" because there is "no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." *Id.* This reliance on the limited intrusiveness of a drug-detection dog sniff was reaffirmed in *City of Indianapolis v. Edmond*, where the Court held that a dog sniff of a vehicle at a traffic checkpoint was not a search because it "does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics." 531 U.S. 32, 40 (2000). S*ee also United States v. McKenzie*, 13 F.4th 223, 233 - 236 (2d Cir. 2021).

{¶33} In the case at bar, Shannon did not challenge "Feyd's" free air sniff as an illegal search in either his written motion to suppress or during the suppression hearing.

*See Motion to Suppress and Request for Oral Hearing,* filed Feb. 9, 2024 (Docket Entry Number 24); Supp. T. at 5; 43. Shannon's motion to suppress raised no specific issues and was only a general motion containing boilerplate language. At the hearing on the motion to suppress, neither party raised the issue of the canine's alert outside of the closed door of the commercial storage unit as a "search" for Fourth Amendment purposes in its questioning of Detective Wolfe, or in opening or closing arguments.

*Canine free air sniffs and probable cause*

{¶34} We recognize that an alert in the context of a canine narcotics sniff indicates that narcotics are present in the item being sniffed, or have been present in such a way as to leave a detectable odor. *United States v. Buchanon*, 72 F.3d 1217, 1219 at n. 1 (6th Cir. 1995); *United States v. Boxley*, 373 F.3d 759 (6th Cir. 2004).

{¶35} In *Florida v. Harris*, the United States Supreme Court, stated, "a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." 568 U.S. 237, 246-247 (2015). The United States Supreme Court held that if the state provides proof that the dog was certified in a controlled setting, and the defendant has not contested that showing, then the court should determine probable cause existed. On the other hand, if the defendant disputes the reliability of the alert, then the court should weigh the competing evidence. *Id.*

{¶36} In the case at bar, Shannon did not challenge "Feyd's" qualifications or training to accurately detect the odor of narcotics, in either his written motion to suppress

or during the suppression hearing. *See Motion to Suppress and Request for Oral Hearing,* filed Feb. 9, 2024 (Docket Entry Number 24); Supp. T. at 5; 43. Shannon's motion to suppress raised no specific issues and was only a general motion containing boilerplate language. At the hearing on the motion to suppress, neither party raised the canine's certification or training in its questioning of Detective Wolfe, or in opening or closing arguments.

*Waiver and motions to suppress*

{¶37} Criminal Rule 47, which governs motions in criminal proceedings, provides, in relevant part:

> An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. *It shall state with particularity the grounds upon which it is made* and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority and may also be supported by an affidavit. (Emphasis added).

{¶38} Criminal Rule 12(C)(3) requires a defendant to file a motion to suppress evidence with the trial court within thirty-five days after arraignment or seven days before trial, whichever is earlier. Criminal Rule 12 further provides that the failure to do so "*shall* constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver." (Emphasis added.) Criminal Rule 12(H).

{¶39} In *City of Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), the Ohio Supreme Court explained that "[Crim.R. 47], when applied to a motion to suppress evidence obtained by search and seizure, requires that the prosecution be given notice of the

specific legal and factual grounds upon which the validity of the search and seizure is challenged." *Id.* at 219. "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits." *Id.* at 218. "Failure on the part of the defendant to adequately raise the basis of his challenge constitutes waiver of that issue on appeal." *Id. Accord State v. Shindler*, 70 Ohio St.3d 54, 58 (1994) ("[b]y requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived."). *See also State v. Toran*, 2023-Ohio-3564, ¶ 36 (Gallagher, J., concurring) ("Toran failed to raise the issue in the trial court with the specificity and citations to authority required by Crim.R. 12(H) and 47. Under Crim.R. 12(H), Toran waived any challenges to the legality of the detective's decision to impound the vehicle he had been driving, and he is not permitted to cite any deficiencies in the state's presentation of evidence, which depended on that waiver, for the first time on appeal."); *State v. Wintermeyer,* 2019-Ohio-5156, ¶ 24 ("If there truly is a Fourth-Amendment-standing concern, it is far better for the issue to be developed in the trial court, where each side has the opportunity to put on evidence, than for a court of appeals to decide the matter in the first instance after the opportunity to develop evidence has passed."). *See also State v. Johnson,* 2014-Ohio-671, ¶ 14 (10th Dist.) (canine search); *State v. Neal*, 2016-Ohio-1406, ¶ 29 (10th Dist.) (canine search).

{¶40} In the case at bar, Shannon failed to challenge in his motion to suppress whether the canine's search violated the Fourth Amendment, and whether the canine was

certified to accurately detect the odor of narcotics. He has therefore waived any argument that Detective Wolfe's affidavit did not support a finding of probable cause because it failed to disclose the qualifications or training of the canine that performed the sniff and, further, that the canine's sniff itself violated any Fourth Amendment concerns.

## Conclusion

**{¶41}** Given all the circumstances set forth in the affidavit before him, and considering the affidavit in its entirety, Detective Wolfe's independent corroboration of the information obtained from his sources, and the canine's positive alert, our review of the record confirms that the judge had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found in Shannon's storage locker. Therefore, probable cause supported the issuance of the search warrant.

**{¶42}** Shannon's sole Assignment of Error is overruled.

**{¶43}** The judgment of the Knox County Court of Common Pleas is affirmed.

By Popham, J.,

Montgomery, P.J., and

Gormley, J., concur