[Cite as *State v. Miller*, 2025-Ohio-5749.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25CA000011 |
| Plaintiff - Appellee | Opinion and Judgment Entry |
| -vs- | Appeal from the Guernsey County Court of Common Pleas, Case No. 24CR165 |
| ROBERT MILLER | Judgment: Affirmed; and Remanded |
| Defendant – Appellant | Date of Judgment Entry: December 23, 2025 |

**BEFORE:** William B. Hoffman, Kevin W. Popham, David M. Gormley, Appellate Judges

**APPEARANCES:** Mark A. Perlaky, Guernsey County Assistant Prosecuting Attorney, for Plaintiff-Appellee; Christopher Bazeley, Esq., for Defendant-Appellant

OPINION

*Hoffman, P.J.*

{¶1}   Defendant-appellant Robert Miller appeals his convictions and sentence entered by the Guernsey County Court of Common Pleas, on one count of possession of a fentanyl-related compound and two counts of trafficking in a fentanyl-related compound, after he entered a plea of no contest following the trial court's denial of his motion to suppress. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On October 22, 2024, the Guernsey County Grand Jury indicted Appellant on one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11, a felony of the first degree (Count 1); one count of trafficking in a fentanyl-related compound, in violation of R.C. 2925.03, a felony of the first degree (Count 2); one count of illegal manufacture of drugs, in violation of R.C. 2925.04, a felony of the first degree (Count 3); and one count of trafficking in a fentanyl-related compound, in violation of R.C. 2925.03, a felony of the fourth degree (Count 4).  At his arraignment on October 24, 2024, Appellant entered a plea of not guilty to the charges.

{¶3}   On January 7, 2025, Appellant filed a motion to suppress, asserting all evidence seized during the search of his residence should be suppressed as there was insufficient probable cause to justify the issuance of the search warrant.  Appellant argued the facts alleged in the Affidavit Requesting Search Warrant were stale and unreliable. Specifically, Appellant maintained: (1) the information was provided by individuals who were inherently suspect; (2) the references to confidential information lacked any degree of specificity; (3) the controlled buy on May 8, 2024, took place more than three months

before the issuance of the search warrant; (4) surveillance from four days prior to the issuance of the search warrant which led to traffic stop in which drugs were seized lacked a link to Appellant; (5) the description in the Affidavit of the activity observed during surveillance, to wit: a drug transaction, was not affirmatively demonstrated in the surveillance video itself; and (6) the CashApp records from Block, Inc. did not include any identifying factors. The State filed a memorandum in opposition on January 17, 2025.

{¶4} The trial court conducted a suppression hearing on March 6, 2025. The following evidence was adduced at the hearing:

{¶5} Guernsey County Sheriff's Detective Adam Masinelli testified he was the primary investigator on a narcotics investigation focused on Appellant. Detective Masinelli explained, sometime around December, 2023, a confidential source began providing information about Appellant. Detective Masinelli learned Appellant sold fentanyl, and was provided with the names of individuals with whom he associates, the name of his supplier, and his address.

{¶6} In February, 2024, sheriff's deputies conducted a traffic stop of Appellant and Cassie Wolverton, his girlfriend. Deputies discovered a large amount of U.S. currency on Appellant's person. Although no narcotics were found in the vehicle, the K-9 officer alerted to the presence or odor of narcotics. Detective Masinelli explained, from his training and experience, it is common for individuals found with large amounts of U.S. currency in their possession to be involved in drug trafficking. Detective Masinelli noted four confidential sources and one confidential informant provided information regarding Appellant's involvement in drug trafficking, which he and his team were able to corroborate.

**{¶7}** Upon learning Appellant used CashApp for drug transactions, an application for electronically transferring money, Detective Masinelli subpoenaed records from the company.[1] Records for the period between the beginning of January, 2024, through the beginning of May, 2024, reflected a high likelihood Appellant's transactions involved the sale of drugs. Detective Masinelli recognized the names associated with these transactions as belonging to individuals involved in drug activity. One account belonged to a high-level narcotics supplier.

**{¶8}** In May, 2024, Detective Masinelli arranged for the confidential informant to make a control buy from Appellant. The buy occurred near Appellant's residence. The drugs purchased from Appellant by the confidential informant tested positive for fentanyl and weighed .63 grams. Thereafter, Appellant's activities were monitored. When asked when the Sheriff's Department began to monitor Appellant's activities, Detective Masinelli responded:

> And again, I know throughout this investigation there's some gaps and stuff like that. Sometimes things change. And you know, the better dealers kind of sometimes are more careful. So it takes some time, and there's some gaps. They get – you know, it's a – it's a game. It's like a cat-and-mouse situation.
>
> We – but we start – we keep receiving these [sic] information specifically from Confidential Source 1. And then the confidential informant used in this case started to not cooperate as much with law enforcement.

---

[1] CashApp is connected to a user's phone number.

So we had some suspicions, started surveilling the -- the residence. And we seen some abnormalities that gave us insight that, you know, wow, drug trafficking is occurring here based on all of what we had before and now up to the current date getting close to the search warrant.

Transcript of March 6, 2025 Suppression Hearing at p. 28.

**{¶9}** Detective Masinelli recalled two incidents which occurred in mid-August 2024. During the course of surveilling Appellant, law enforcement observed him meet with an individual identified as Robert Berger, who was known to be involved in narcotics activity. Troopers with the Ohio State Highway Patrol stopped Berger's vehicle and subsequently discovered narcotics paraphernalia and narcotics residue on Berger's person. While conducting further surveillance in mid-August 2024, Detective Masinelli observed Berger's vehicle parked in the lot at Appellant's residence. Appellant exited the building and approached Berger's vehicle. Appellant dropped something inside the vehicle during the brief encounter. From his training and experience, Detective Masinelli believed a hand-to-hand drug transaction had taken place. Detective Masinelli prepared a search warrant affidavit and submitted it to a judge.

**{¶10}** On cross-examination, Detective Masinelli testified, between the initial traffic stop on February 15, 2024, and the controlled buy on May 8, 2024, he continually received information about Appellant from the four confidential sources and one confidential informant. Detective Masinelli acknowledged law enforcement did not have any direct evidence nor had law enforcement seized any drugs in the period between February 15, and May 8, 2024. Detective Masinelli reiterated:

We have the – the traffic stop after the initial information, and the red flag from the money, in my eyes from my training, experience, these things continue. I know that sometimes people slow down or things change. Sometime drug dealers are careful.

It's not always one after the other. It – these investigations are done specifically in order like, oh, just four or six months, you know, you knock it out. Sometimes there's gaps. Sometimes things happen. Like I said, it's like a cat-and-mouse game.

*Id*. at pp. 50-51.

**{¶11}** On re-direct examination, Detective Masinelli noted, throughout the investigation into Appellant, he received information from the confidential sources and confidential informant which he was able to corroborate. Detective Masinelli added records obtained from CashApp for the period from January to May, 2024, revealed frequent transactions between Appellant and individuals known to the detective to be involved in drug activities. Detective Masinelli emphasized the gaps in Appellant's trafficking activity was not unusual for that type of investigation.

**{¶12}** Via Findings of Fact/Conclusions of Law/Judgment Entry issued March 25, 2025, the trial court denied Appellant's motion to suppress. The trial court found the Cambridge Municipal Court judge who issued the search warrant had a substantial basis for concluding probable cause existed.

**{¶13}** Appellant appeared before the trial court for a final status pretrial on April 18, 2025. Counsel for Appellant and the State advised the trial court a negotiated plea

had been reached.  As part of the terms of the negotiated plea, the State moved to amend Count 4 of the Indictment from trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(1) and (C)(9)(b), a felony of the fourth degree, to trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(1) and (C)(9)(b), a felony of the fifth degree.  The trial court granted the State's oral motion and amended Count 4 of the Indictment.  Thereafter, Appellant entered a plea of no contest to Count 1, Count 2, and Amended Count 4.  The trial court accepted Appellant's plea and immediately proceeded to sentencing.  The trial court imposed an indefinite sentence with a minimum mandatory term of 11 years and a maximum term of 17½ years.

{¶14} It is from his conviction and sentence Appellant appeals, raising the following assignments of error:


I. THE TRIAL COURT ERRED WHEN IT OVERRULED MILLER'S MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH A SEARCH WARRANT THAT WAS BASED ON INSUFFICIENT AND STALE EVIDENCE.

II. THE TRIAL COURT FAILED TO ADVISE EDWARDS [SIC] OF HIS RIGHTS UNDER THE REGAN [SIC] TOKES STATUTE AT SENTENCING.


I

{¶15} In his first assignment of error, Appellant asserts the trial court erred in denying his motion to suppress.

## Standard of Review

**{¶16}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 1995-Ohio-243; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, supra; *Dunlap*, supra; *State v. Long*, 127 Ohio App.3d 328, 332 (4th Dist. 1998); *State v. Hill*, 2024-Ohio-522, ¶ 16 (5th Dist.). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside*, supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266 (2002); *Ornelas v. United States*, 517 U.S. 690 (1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698.

## Analysis

**{¶17}** Appellant maintains the trial court's denial of his motion to suppress was erroneous as "much of the evidence cited in the affidavit used to obtain the warrant was 'stale' or too old to be useful in establishing probable cause." Brief of Appellant at pp. 2-

3. Appellant adds, "[t]he relevant, or 'not stale,' evidence does not support a finding of probable cause to search [Appellant's] apartment." *Id*. at p. 3. We disagree.

**{¶18}** To establish probable cause to issue a search warrant, the supporting affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched. *State v. Lang*, 2023-Ohio-2026, ¶ 12 (1st Dist.); *State v. Martin*, 2021-Ohio-2599, ¶ 11 (1st Dist.). Probable cause exists when a reasonably prudent person would believe a fair probability exists the place to be searched contains evidence of a crime. *State v. George*, 45 Ohio St.3d 325, para. one of syllabus (1989); *Lang* at ¶ 12. "[I]t is clear that 'only the probability, and not prima facie showing, of criminal activity is the standard of probable cause.'" (Emphasis deleted.) *George* at 329, quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

**{¶19}** When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, an appellate court should accord great deference to the magistrate's judgment. *State v. McDaniel*, 2015-Ohio-1007, ¶ 26 (5th Dist.), citing *State v. Mills*, 62 Ohio St.3d 357, 367 (1992). "[A]fter-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of de novo review." *George* at 329, quoting *Illinois v. Gates* at 236. An appellate court's duty is to ensure the issuing magistrate had a substantial basis for concluding probable cause existed. See *George* at para. two of syllabus; *State v. German*, 2005-Ohio-527, ¶ 12 (1st Dist.). Doubtful or marginal cases should be resolved in favor of upholding the warrant. *George* at para. two of syllabus; *Lang* at ¶ 13.

**{¶20}** Because probable cause to search is concerned with facts relating to a presently existing condition, a magistrate or judge must consider whether the information

supporting the issuance of a warrant has grown stale. An affidavit for a search warrant must present timely information. *State v. Lackey*, 2023-Ohio-3720, ¶ 10 (1st Dist.). "There is no arbitrary time limit that dictates when information [offered to support a search warrant application] becomes stale." *State v. Ingold*, 2008-Ohio-2303, ¶ 22 (10th Dist.). Rather, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *Id.* See also *State v. Rieves*, 2018-Ohio-955, ¶ 31 (8th Dist.) (information becomes stale when enough time has elapsed such that there is no longer sufficient basis to believe the items to be seized are still on the premises).

**{¶21}** "The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant." *Ingold* at ¶ 23. "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id.*

**{¶22}** An affidavit supporting a search warrant which, viewed in its totality, indicates investigation into an ongoing criminal operation, such as drug trafficking, may support the issuance of a search warrant even where the information provided in the affidavit is not recent. *State v. Stewart*, 2021-Ohio-4444, ¶ 15 (5th Dist.), citing *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir. 1998), quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981) ("[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and

the presentation of the application becomes less significant."); *State v. Ridgeway*, 2001-Ohio-2655 (4th Dist.), quoting *State v. McKenzie*, 6th Dist. Erie No. E-97-040 (Sept. 18, 1998) (" '[A]n affidavit which establishes a pattern of conduct or indicates an ongoing investigation can justify the granting of a search warrant based on old information.' ").

**{¶23}** Appellate courts have found information in an affidavit over one month old supports probable cause to issue a search warrant where the affidavit describes ongoing criminal activity. See, e.g., *State v. Clouser*, 2016-Ohio-5370, ¶ 16-17 (4th Dist.) (two and one-half months between last incidents of drug transactions and warrant application not stale and supported probable cause); *State v. Prater*, 2002-Ohio-4487, ¶ 10-14 (12th Dist.) (six months between last drug transactions and warrant application not stale and supported probable cause).

**{¶24}** In the instant action, the facts set forth in the affidavit supporting the search warrant present a picture of continuing conduct and ongoing drug activity. Viewing the totality of the circumstances, we believe the information in the affidavit provided a reasonable basis for believing evidence of possession and trafficking would be found at Appellant's residence, despite the passage of time. As Detective Masinelli explained:

> * * * I know throughout this investigation there's some gaps and stuff like that. Sometimes things change. And you know, the better dealers kind of sometimes are more careful. So it takes some time, and there's some gaps. * * * it's a game. It's like a cat-and-mouse situation. * * * we keep receiving these [sic] information specifically from Confidential Source 1. * * * we had some suspicions, started surveilling the -- the residence. And we

seen some abnormalities that gave us insight that, you know, wow, drug trafficking is occurring here based on all of what we had before and now up to the current date getting close to the search warrant.

Tr. at p. 28.

**{¶25}** Accordingly, we find the trial court did not err in determining there was sufficient probable cause to issue the search warrant.

**{¶26}** Appellant's first assignment of error is overruled.

II

**{¶27}** In his second assignment of error, Appellant contends the trial court erred in failing to advise him at sentencing of his rights under R.C. 2929.19(B)(2)(c), the Reagan Tokes Law.  We agree.

**{¶28}** R.C. 2929.19(B)(2)(c) provides:

[I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall do all of the following:

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

**{¶29}** By indicating the sentencing court "shall do all of the following" and "notify the offender of all of the following," the legislature clearly placed a mandatory duty upon the trial court rather than granting it discretion. *State v. Abdus-Salaam*, 2024-Ohio-2773, ¶ 80. "Thus, when sentencing an offender to a non-life felony indefinite prison term under the Reagan Tokes Law, a trial court must advise the offender of all five notifications set forth in R.C. 2929.19(B)(2)(c) *at the sentencing hearing* to fulfill the requirements of the statute." (Emphasis added.) *Id.*, citing *State v. Wolfe*, 2020-Ohio-5501, ¶ 36 (5th Dist.); *State v. Hodgkin*, 2021-Ohio-1353, ¶12 (12th Dist.). "While the trial court is not required to recite the statutory language verbatim in providing the notifications to the defendant at sentencing, the record must nonetheless reflect that each of the necessary notifications were provided." *Id.*, citing *State v. Brown*, 2021-Ohio-2291, ¶17 (12th Dist.). *State v. Miles*, 2020-Ohio-6921, ¶ 20, 27-31 (11th Dist.); *State v. Long* 2021-Ohio-2672, ¶ 27-29 (4th Dist.); *State v. Whitehead*, 2021-Ohio-847, ¶ 43, 45-46 (8th Dist.); *State v. Hodgkin*, 2021-Ohio-1353, ¶ 24-25 (12th Dist.).

**{¶30}** Upon review of the transcript of the April 18, 2025 plea and sentencing hearing, we find the trial court failed to orally advise Appellant of any of the required notifications set forth in R.C. 2929.19(B)(2)(c). This Court has held "[t]he failure to advise the defendant of *any* of the five notifications constitutes error and a remand for the limited purpose of permitting the sentencing court to provide the mandatory notifications required by R.C. 2929.19(B)(2)(c) is necessary." (Emphasis added and citations omitted.) *Id*. at ¶ 83.

**{¶31}** Accordingly, Appellant's second assignment of error is sustained and the matter remanded for the sole purpose of providing Appellant with the required notifications set forth in R.C. 2929.19(B)(2)(c).

**{¶32}** For the reasons stated in our accompanying Opinion, the judgment of the Guernsey County Court of Common Pleas is affirmed and the matter remanded for further proceedings consistent with this Opinion and the law.

By: Hoffman, P.J.

Popham, J. and

Gormley, J. concur